## 15861

### CARTER'S DEPENDENTS v. PALMETTO STATE LIFE INS. CO. ET AL.

(38 S. E. (2d), 905)

*Messrs. Henry H. Edens,* of Columbia, and *J. Frank Eatmon,* of Kingstree, for Appellants,

*Messrs. Ashley C. Tobias, Jr.,* and *Roger M. Heyward,* of Columbia, for Respondents,

August 2, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous opinion of the Court.

This case arose out of a claim by dependents for death benifits arising under the Workmen's Compensation Act. Deceased R. D. Carter was connected with the Palmetto State Life Insurance Company as an industrial insurance agent, under the terms and conditions of a written contract designated "Agent's Agreement" and was assigned debits in the Sumter District, which included Williamsburg County. On April 18, 1944, while traveling·in his automobile and working one of these routes or debits, he was accidentally killed by an A. C. L. Railroad train at a crossing near Kingstree, South Carolina. The claimants, his widow and minor child, seek to recover against Palmetto State Life Insurance Company as employer, and Glens Falls Indemnity Company as carrier.

A hearing was held and an award made by Commissioner John H. Dukes on November 9, 1944, by which claimants were awarded benefits at the rate of $25.00 per week for a period of 350 weeks, or $6,000.00, including $200.00 funeral benefits—dependents to share and share alike. In due course, an appeal was taken to the Full Commission who unanimously affirmed the award of the Hearing Commissioner. Within due time, an appeal to the Court of Common Pleas was noticed and perfected and the case was heard before the

Honorable Philip H. Stoll, Judge of the Third Judicial Circuit, who filed an Order dated June 18, 1945, reversing the Full Commission award and directing judgment in favor of Respondents. From this Order, claimants now appeal to this court upon exceptions which raise three questions necessary for determination of this case.

(1) Was the deceased an employee of the Palmetto State Life Insurance Company within the meaning of the South Carolina Workmen's Compensation Act?

(2) Was the Palmetto State Life Insurance Company operating under the South Carolina Workmen's Compensation Act at the time this claim arose?

(3) Is carrier liable under the terms of its policy?

Section 2b of the South Carolina Workmen's Compensation Act provides that the term employee means every person engaged in an employment under any appointment or contract of hire or apprenticeship, expressed or implied, oral or written.

The test is one of control.

"In determining whether a person is an employee within a workmen's compensation act, or an independent contractor, the most frequently cited test, which is cited in various ways, is that of control, he being an employee if he is subject to the control of the party for whom the work is done, and an independent contractor if he is not * * * A number of decisions are broadly on the basis, or broadly hold, that a worker is an independent contractor where he has, and an employee where the party for whom the work is being done has, the right to direction of the work."

71 C. J. 449, Page 184.

"Whether or not the employer has the right of control is to be determined from the contract of employment." 71 C. J. 456, Page 185.

When the deceased commenced his work with the Palmetto State Life Insurance Company, he took over an already established route or debit for the collection of premiums on policies previously issued by the Company, as well as to canvass for new business and collect premiums on the policies obtained or transferred to him. It was his duty to collect on all policies in his debit. He had a definite number of policies to collect on and report to the company daily such collections upon forms provided by it.

Paragraph 3 of the contract between the deceased and the company reads as follows:

"3. To conform to the rules and regulations of the company in force at the time of this Agreement, and hereafter as they may be made; and, to hold all books, papers, printed material and supplies as the property of the company, the same to be delivered on demand to my superior officer or to anyone whom he designates, or upon the termination of this Agreement and *further agree to give my full time to the service of the Company to not engage in any other occupation while in the employ of the Company,* to account for and turn over, either daily or weekly, as may be required, to the Company or anyone delegated to receive it, all money collected by me, and to do all of the work required by the Company in any Department of its business by and according to its rules and regulations."

His full time was that of the company to do all work required by it. He was assigned a definite territory with definite policy holders to be called on and the results of his labors were to be handled in a definite manner.

Respondents contend that the activities of the deceased were controlled by them only in a general way. That is, they did not tell him definite places to be at definite times, that he was required to contact the policy holders in his territory but that this could be done at his convenience at such times as he saw fit, therefore he was an independent

contractor. The following letter dated January 25, 1940, is some evidence of the relationship then existing between deceased and the Palmetto State Life Insurance Company.

"TO ALL AGENTS

PALMETTO STATE LIFE INSURANCE COMPANY

Gentlemen:

For several years we have had in effect a cooperative plan of group insurance. During that period of time, claim payments have thoroughly demonstrated the value and wisdom of such a plan. You provide food, clothing and shelter for yourself and your family from your pay check. We all do that. We must all make some provision if that pay check is stopped either through death or disability. As an employee of this Company you recognize these needs—for selling such needs is your job and means a livelihood.

Realizing the need of our employees for income to replace that lost through disability, we have arranged to provide a weekly indemnity plan of insurance for you in the event of disability preventing you from working. This benefit will be paid you weekly while disabled and will assist you materially in providing income needed in this emergency.

Equally as important to you is the problem of financing the expense resulting from hospitalization due to accident or sickness, whether it be yourself or members of your family. In order to assist you in meeting these hospital and surgical expenses on yourself and your dependents, we have provided a plan of hospital and surgical expense insurance.

As an employee of the Palmetto State Life Insurance Company, you will be elegible at the end of thirty days following your employment to protection under our group insurance plan with the General American Life Insurance Company, of St. Louis. A description of the coverage for yourself and for members of your family, is outlined on the attached sheets.

An application card is attached for your convenience in applying for these benefits now, to become effective after you have been with our Company for 30 days. No medical examination will be required nor will you be asked any questions in regard to your physical condition or that of your family if application is made now. Since your Company contributes generously toward the cost of this insurance so that you can have its benefits at a low cost, we expect you to make application for this insurance at once. That part of the cost you are expected to pay will be deducted monthly from your pay check for convenient remittance to the insurance company.

If you have any questions not answered in the attached folder, your Manager will be able to answer them for you. All of our employees are protecting their ability to work and earn money through this plan of insurance, and we believe it is to your advantage to have this protection.

Please return the completed application card at once. You will be advised as soon as the insurance has been made effective, and your individual certificates will be sent you at that time.

Yours very truly,

C. G. LANGLEY,
*President".*

In *Superior Life, Health & Accident Co. v. Unemployment Compensation Board of Review,* 25 A. (2d), 88, 148 Pa. Super., 307, Vol. 14, Words and Phrases, Cumulative Pocket Part, P. 64, was held that a "life insurance Company's agent for collection of premiums and solicitation of insurance policies" was an "employee" thereof within Unemployment Compensation Law.

In *Cameron v. Pillsbury,* 159 P. 149, Words and Phrases, Vol. 14, P. 363, we find the following:

"Where the applicant had a contract for stipulated wage for service as a rental and insurance agent and a further con-

tract with his employer for commission on renewals and new business, the employer being entitled under the contract to the entire time of the applicant, and exercising control over his movements during business hours, he was an 'employee', whether engaged in the regular work or under his commission contract, all the work being done in the course of his employment."

In *Brown v. Industrial Accident Commission of California*, 163 P. 664, 174 Cal., 457 (Words and Phrases, Col., 14, p. 364), a person was employed to sell lots for a commission of 20% of the selling price, etc., and contracted to devote his whole time and energy to selling his employer's lots, further agreeing not to sell any other real estate in the vicinity for any other person without the employer's consent; and such agent was injured in an automobile accident while carrying on his employer's business. It was here held that the agent was an employee within the Workmen's Compensation Act, and not an independent contractor.

This Court is of the opinion that there was sufficient evidence to warrant the Industrial Commission's finding that the deceased was an employee of the Respondents within the meaning of the Workmen's Compensation Act, and this being true, such findings are binding upon the Court of Common Pleas and this Court. See *Elrod v. Union Bleachery et al.*, 204 S. C., 481, 30 S. E. (2d), 73.

Having determined that the deceased was an employee of the Palmetto State Life Insurance Company, we now come to the question of whether or not said company was operating under the provisions of the Workmen's Compensation Act at the time of the accident.

On April 5, 1938, the following notice of election to adopt was given by the Insurance Company:

"This is notice that the undersigned employer and employees, otherwise exempt from the provisions of the S. C. Workmen's Compensation Act do, nevertheless, by their

joint elections, adopt the provisions of said Act as provided in Section 14 thereof, which election shall continue until recalled by joint action of employer and employees, and shall include future employees, unless they elect to reject the Act."

It is the contention of the Respondents that this notice covered only the elevator operations in the building which they own and occupy, that this is substantiated by the fact that only a relatively small amount was paid as premium to the carrier and that this elvator was operated for the benefit of other tenants of the building, as well as the Respondents. Appellants however base their contention that the Respondent was operating under the Workmen's Compensation Act, principally, upon the above quoted notice and rule 6 of the Industrial Commission which states that "Where an employer has elected to come under the act, he will remain under the act until notice to the contrary is filed with the Industrial Commission". No such notice to reject having been given and no denial on the part of Respondents that the notice is still in effect. That there is nothing in the notice that the Respondents intended to come under the act as to its elevator operators only, further that the Palmetto State Life Insurance Company, through its own executives had active supervision of the building which represented one of its investments, and the running of the elevator therein was an integral of, and just as much part and parcel of the insurance business as the activities of the deceased herein in collecting debits.

It is true that other tenants occupy the building along with the Respondent and this elevator operates to serve them also but the building is owned and operated by the Respondent as its headquarters and all income or expenditures acquired from such operations go to help make up the profits or loss of the company.

The Legislature did not intend that one should divide his business so that he could accept the benefits of our Work-

men's Compensation Act as to one feature of his business and reject it as to another of the same business. The basic purpose of the Workmen's Compensation Act ·is the inclusion of employers and employees and not their exclusion. *Kennerly v. Ocmulgee Lumber Company et al.,* 34 S. E. (2d), 792, .... S. C., .... ; *Hopkins v. Darlington Veneer Co. et al.,* 38 S. E. (2d), 4, .... S. C., .....

The evidence shows that the operations of the building were an essential part of the insurance business in which Respondent was engaged and under the principles set forth above when the company came under the provisions of the Workmen's Compensation Act, they did so as to all employees engaged in executing a part of the general trade, business or occupation of the owner within the meaning of the Workmen's Compensation Act.

*Hopkins v. Darlington Veneer Co. et al., supra; Kennerly v. Ocmulgee Lumber Co., supra.*

A standard Workmen's Compensation policy was issued by the carrier, which, among other things, says that the location of the business is in Columbia, South Carolina, and then Sub. (15) of Item 3 says that this policy covers five operations not on the premises also under "classification of operations" the policy states that it covers:

"2 (a) Clerical Office Employees

(b) Outside salesmen, Collectors and Messengers (whereever engaged) who do not deliver merchandise."

Paragraph 6 of the agreement in the policy states:

"Six. This Agreement Shall Apply to such injuries so sustained by reason of the business operations described in said declaration which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to such work places."

The carrier contends that the premium collected was so small and out of proportion to the number of collectors used by the company that it could not reasonably be contemplated that they were intended to be covered by the policy.

"The provisions of a compensation policy, and its statements, warranties, and promises do not affect the rights of injured employees but only the rights of the subscriber and the insurer *Inter Sese.*" 71 C. J., Section 634, p. 907.

For the foregoing reasons, this Court is of the opinion that the Order of the Circuit Court should be reversed and the award of the South Carolina Industrial Commission reinstated and it is so ordered, but this Court makes no intimation as to any differences that have arisen or might arise between the Palmetto State Life Insurance Company and their carrier, the Glens Falls Indemnity Company.

Judgment reversed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.