17523

Ben J. DeBERRY, Respondent, v. COKER FREIGHT LINES, and United States Fidelity and Guaranty Company, Appellants.

(108 S. E. (2d) 114)

*Messrs. C. M. Edmunds* and *G. Werber Bryan,* of Sumter, *for appellant,*

*Messrs. Weinberg & Weinberg,* of Sumter, *for respondent,*

April 13, 1959.

Moss, Justice.

This is a proceeding for compensation under the Workmen's Compensation Act, Section 72-1 *et seq.,* Code of 1952, instituted by Ben J. DeBerry, respondent, against Coker Freight Lines, and its insurance carrier, United States Fidelity & Guaranty Company, the appellants herein. The respondent asserts that he was an employee of Coker Freight Lines and that he received an injury by accident arising out of and in the course of his employment. The appellants assert that the respondent was not an employee of Coker Freight Lines within the meaning of the Compensation Act.

The question of whether or not the respondent was an employee of Coker Freight Lines at the time of his injury has been resolved in favor of the said respondent by the Single Commissioner and the Full Commission. From the findings and award of the Full Commission an appeal was made to the Court of Common Pleas for Sumter County upon three exceptions, which were heard by the Honorable J. Woodrow Lewis, Presiding Judge, who overruled all of the exceptions and affirmed the award made by the Industrial Commission. Timely appeal to this Court followed.

The exceptions of the appellants pose three questions. (1) Was the respondent an independent contractor? (2) Was the

respondent a casual employee of Coker Freight Lines? (3) Was the respondent an employee of Coker Freight Lines within the meaning of the South Carolina Workmen's Compensation Act?

It appears from the testimony that Coker Freight Lines is a common carrier of freight, operating in interstate commerce, and was under contract to deliver a shipment of plywood to three consignees, one being in Lodi, New Jersey, and the other two in the State of New York. It appears that while the respondent was unloading the plywood in Lodi, New Jersey, that some of the plywood fell on him and broke his leg. This is the injury for which he seeks compensation.

The truck which the respondent had driven to New Jersey was owned either by Frances J. Jordan or Jordan Motor Lines, Inc., and the respondent was employed by the owner of the truck. The truck and the respondent were leased by the owner thereof to the Coker Freight Lines for the purpose of transporting the plywood in question to the consignees in the States of New Jersey and New York. The owner of the truck was to receive a portion of the freight charge as compensation, and the respondent a percentage of the owner's share as his wages for operating the truck. It further appears that the owner of the truck was not a licensed common carrier in interstate commerce. The truck, therefore, at the time of the injury to the respondent, was being operated solely under the authority granted to Coker Freight Lines as a common carrier in interstate commerce, and in fulfillment of the contract of Coker Freight Lines to transport the plywood from Sumter, South Carolina and deliver it in Lodi, New Jersey, and other points.

What constitutes one an independent contractor is fully set out in the cases of *Carter's Dependents v. Palmetto State Life Ins. Co.,* 209 S. C. 67, 38 S. E. (2d) 905; *Gomillion v. Forsythe,* 218 S. C. 211, 62 S. E. (2d) 297, 53 A. L. R. (2d) 169 and *Cooper v. Graham,* 231 S. C. 404, 98 S. E. (2d) 843. The right or power of con-

trol retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee or an independent contractor.

In the case of *Brownlee v. Charleston Motor Express Co., Inc.,* 189 S. C. 204, 200 S. E. 819, 824, it appears that the plaintiff had been injured by a truck operated by the defendant corporation under its license, which said truck and the driver had been leased from one Cordray. While hauling the defendant's freight, the truck became involved in an accident in which the plaintiff was injured. The question of the truck driver's relationship to the defendant corporation was raised and submitted to the jury. The jury, by its verdict, found that the driver was an employee of the defendant. Upon appeal, this Court said:

" 'It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the person to whom he is loaned or hired. * * *' 18 R. C. L. 493, Section 3.

" '* * * In the case of an oral contract, if there is no material dispute in the testimony, whether the employee is an independent contractor may present a question for the Court; but, where the evidence is conflicting, or where different inferences may be drawn from the testimony concerning the oral contract, the matter is one for the jury to determine.' 14 R. C. L. 79, Section 16."

The case of *Brabham v. Southern Asphalt Haulers, Inc.,* 223 S. C. 421, 76 S. E. (2d) 301, 305, was an action for injuries to the plaintiff when a panel truck in which she was riding was forced from the highway into a concrete bridge by a tractor and trailer owned by Southern Asphalt Haulers, Inc., and leased along with its driver to Infinger Transpor-

tation Co., Inc., which had an interstate commerce certificate, the lessor not having such a certificate. A verdict for damages for the injuries sustained by the plaintiff was entered against the Infinger Transportation Co., Inc. It appeared from the evidence that Infinger had been awarded a contract to transport asphalt from Charleston, S. C., to Durham, North Carolina, and did not have sufficient equipment to transport such asphalt products, and entered into a lease agreement with Southern Asphalt Haulers, Inc., whereby equipment of the latter was to be used in the transportation of the asphalt products under interstate commerce rights held by Infinger Transportation Co., Inc. It was testified that the leased equipment was under the control and supervision of Infinger. In disposing of the appeal by Infinger, this Court said:

"When the foregoing is considered in the light of the principle set forth in the *Brownlee case, supra,* it is clear that there was sufficient evidence from which the jury could conclude that the appellant as lessee of the tractor and trailer assumed direction and control of such vehicle in its operation and in doing so assumed responsibility for the proper operation thereof. It is true that the drivers thereof would be kept upon the payroll of the Southern Asphalt Haulers, Inc., but provision was made for the deduction of wages, social security taxes, etc., without such drivers actually appearing on the payroll of the appellant; but this in nowise renders a nullity the fact that the appellant assumed complete control and direction of the operation of such equipment and its operators while operating in interstate commerce under its I.C.C. rights and it will not be permitted to escape liability to the public for the negligent operation of such equipment. *Shapiro v. City of Winston-Salem,* 212 N. C. 751, 194 S. E. 479; *Jocie Motor Lines, Inc., v. Johnson,* 231 N. C. 367, 57 S. E. (2d) 388; *Brown v. L. H. Bottoms Truck Lines, Inc.,* 227 N. C. 299, 42 S. E. (2d) 71; *Wood v. Miller,* 226 N. C. 567, 39 S. E. (2d) 608; *Hodges v. Johnson,* D. C., 52 F. Supp. 488; *Steffens v. Continental*

*Freight Forwarders Co.,* 66 Ohio App. 534, 35 N. E. (2d) 734; *Kimble v. Wilson,* 352 Pa. 275, 42 A. (2d) 526, Restatement of the Law of Torts, Section 428."

The record shows that Coker Freight Lines was a motor carrier of goods in interstate commerce, operating under authority of a certificate or license issued by the Interstate Commerce Commission. The transportation of goods in interstate commerce by a motor carrier is subject to the applicable provisions of the Federal Statutes governing such carriage, and the rules, regulations and requirements of such commission. 49 U. S. C. A. § 301 *et seq.* Coker Freight Lines, in order to augment its equipment for the transportation of the plywood in question, obtained by contract the truck of the owner and the driver employed by such owner. This carrier issued a manifest showing the origin and destination of this shipment, and that the driver of the truck was the respondent. The testimony reveals that when the lease of the equipment and the driver was made with Coker Freight Lines, Inc., the owner did not know to what destination the truck and the driver would be dispatched. The manifest and the bills of lading were the directions to the driver of the truck as to the destination of the shipment. The respondent testified that he would have driven the truck and made a delivery at any place the manifest and bills of lading directed him to go. The testimony further shows that the manager of Coker Freight Lines, Inc., delivered the manifest and bills of lading to the respondent, and in addition thereto orally stated that the plywood was due to be unloaded at its destination on the Monday following the shipment. The respondent also testified that under the rules of the Interstate Commerce Commission, if he had done anything contrary to the instructions given by the shipper, he could have been discharged insofar as the particular load was concerned. It is in testimony that Coker told the respondent where to go and what to do, and that the owner of the truck had nothing to do with when or where Coker sent the respondent. It is also in testimony that after the respondent was injured

that Coker made the arrangements to have the cargo taken on for delivery in Brooklyn, New York. The log book of Coker was in the possession of the respondent and upon the completion of delivery of the shipment of plywood, such was to be returned to Coker. We can conclude from the foregoing testimony that the respondent was about the business of Coker Freight Lines at the time of the injury and that Coker had the right of dominion and control over the respondent and the cargo, and did exercise control over the cargo after the accident.

The owner of the truck in question could not have used it to deliver the shipment from Sumter, South Carolina, to the points heretofore stated for the reason that the owner was not licensed to engage in interstate transportation of goods. The truck for the period of transportation of the shipment in question was in the possession of and under the control of Coker Freight Lines, Inc. The operation of the truck was, in law, under the supervision and control of the interstate franchise carrier and could be lawfully operated only by those standing in the relationship of employees to the authorized carrier. Coker could not contract for the use of a truck or employ an independent truck owner not a holder of a certificate or permit from the Interstate Commerce Commission, except under its own permit and by virtue of its franchise.

The Interstate Commerce Commission, under whose authority Coker Freight Lines, Inc., was at the time operating, did by an order effective November 23, 1956, provide that every lease or interchange of vehicles involving interstate commerce:

"Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement."

In the North Carolina case of *Brown v. L. H. Bottoms Truck Lines, Inc.,* 227 N. C. 299, 42 S. E. (2d) 71, 75, it

appeared that the defendant leased a truck from and employed the plaintiffs' intestate to drive the same in interstate commerce. There was a wreck and the driver-lessor was killed. The North Carolina Industrial Commission made an award to the plaintiffs under the North Carolina Workmen's Compensation Act, holding that the death of the lessor-driver had arisen out of and in the course of his employment by the defendant truck lines. In affirming the award the North Carolina Supreme Court said:

"The transportation of goods in interstate commerce by motor vehicles was required to be under the rules and regulations of the Interstate Commerce Commission, and the Brown truck could only have been used in such transportation by the defendant franchise carrier as one of its fleet of trucks under its license plates. Hence it would seem to follow that control of the operation for the period of the lease was given to the licensed carrier, and that the owner-driven truck was in contemplation of law in its employ and the driver for the trip stood in the relationship of its employee, as found by the Industrial Commission.

"We think the applicable rule, under the facts here presented, is that the lease or contract by which the equipment of the authorized interstate carrier was augmented, must be interpreted as carrying the necessary implication that possession and control of the added vehicle was, for the trip, vested in the authorized operator.

"This conclusion is in accord with well-considered decisions in other jurisdictions."

The respondent asserts that under the "Lent Employee Theory" that the judgment of the lower Court should be affirmed. We have heretofore cited the case of *Brownlee v. Charleston Motor Express Co., Inc., supra,* which holds that where a servant is loaned or hired by his master to another for some special service, he becomes as to such service the servant of such third person, provided that in the particular service which he is engaged to perform he is subject to the control of the special employer.

Professor Larson in his treatise on the Workmen's Compensation Law, at Section 48 thereof, says:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) The employee has made a contract of hire, express or implied, with the special employer;

"(b) The work being done is essentially that of the special employer; and

"(c) The special employer has the right to control the details of the work.

"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. Employment may also be 'dual', in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separable and can be identified with one employer or the other. When this separate identification can clearly be made, this particular employer whose work was being done at the time of injury will be held exclusively liable."

In connection with the "Lent Employee Theory" we call attention to the annotations in 3 A. L. R. 1181; 34 A. L. R. 768; 58 A. L. R. 1467, and 152 A. L. R. 816.

We think that under the testimony in this case it is sufficient to warrant the conclusion that Coker Freight Lines, Inc., was the special employer of the respondent and became liable to him under the Workmen's Compensation Act for the injuries sustained by him.

The trial Judge also held that the award of the Industrial Commission should be sustained pursuant to Section 72-111 of the 1952 Code of Laws of South Carolina. The construction of this statute was first before this Court in the case of *Marchbanks v. Duke Power Company,* 190 S. C. 336, 2 S. E. (2d) 825. The *Marchbanks case* has been followed in subsequent decisions of this Court, the last being that of

*Adams v. Davison-Paxon Company,* 230 S. C. 532, 96 S. E. (2d) 566. We do not deem it necessary to discuss the applicability of Section 72-111 of the 1952 Code of Laws as such has been construed in the cited cases, for the reason that the holding there could not do more than augment the conclusions we have heretofore reached.

We conclude that the respondent was an employee of Coker Freight Lines, Inc., within the meaning of the Workmen's Compensation Act of this state and was not an independent contractor as the appellants assert.

The appellants also insist that if we should conclude that the respondent was an employee of Coker Freight Lines, Inc., then he was a casual employee to whom the compensation law does not apply.

Section 72-11 of the 1952 Code of Laws defines an employee in the following terms:

"The term 'employee' means every person engaged in an employment under any appointment, contract of hire, * * * express or implied, oral or written, * * * but excluding a person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer; * * *".

It is also provided in Section 72-107(1) of the 1952 Code of Laws that casual employees are excluded from coverage under the Workmen's Compensation Act. This court has held that Sections 72-11 and 72-107 are not in conflict as to casual employees because they both exclude them from coverage under the Compensation Act. *Jolly v. Atlantic Greyhound Corporation,* 207 S. C. 1, 35 S. E. (2d) 42.

The appellants assert that under the case of *Jolly v. Atlantic Greyhound Corporation, supra,* and the case of *Benbow v. Edmunds High School,* 220 S. C. 363, 67 S. E. (2d) 680, 682, that we should hold that the respondent here was a casual employee of Coker. In the *Jolly case* the claimant was a general employee at a place of business which included a store, cafe, beds for lodging and a filling station. It was

located in a rural area. A bus of the Atlantic Greyhound Corporation stopped at the filling station on account of motor trouble. In an attempt to get the motor started, claimant was asked to pour gasoline into the carburetor as the driver of the bus operated the starter. While so doing, there was an explosion, as a result of which the claimant suffered serious burns. This Court held that even if claimant was considered an employee of the bus company, he was only a casual employee to whom the compensation law is not applicable.

In the case of *Benbow v. Edmunds High School, supra,* the claimant was a regular employee of an electrical contractor in the city of Sumter. He was sent by his foreman to the high school to repair a light. The school kept its own maintenance crew for the purpose of ordinary maintenance work, but these employees were unable to do the work which the appellant had been sent to perform. The claimant, while engaged in repairing a light fixture, was injured in a fall from his stepladder. This Court held that it was clear that the conventional relationship of master and servant did not exist between the Edmunds High School and the contractor's employee since there was no privity of contract between them. The Court excluded the claimant from coverage because if an employee, such was casual.

In the *Benbow case* this Court said:

"The courts of other states have encountered considerable difficulty in the interpretation of the phrase 'casual employee'. Annotations 33 A. L. R. 1452; 60 A. L. R. 1195, and 107 A. L. R. 934. Many of the decisions cannot be reconciled. We had occasion to refer to some of the definitions of the above phrase in *Ward v. Ocean Forest Club, Inc.,* 188 S. C. 233, 198 S. E. 385, and *Jolly v. Atlantic Greyhound Corporation, supra.* As well stated in *Pfister v. Doon Electric Co.,* 199 Iowa 548, 202 N. W. 371, 373: 'It is less difficult to recognize such "casual" employment when it is presented in a given case than it is to lay down a rule or definition that can become decisive of every case.' The

Court there held that the purpose of the proviso excluding casual employees 'was to narrow or to withdraw the application of the broader terms of the statute from those "casual" employments, which are more or less incidental to the life of everybody.' "

We do not think that the instant case is controlled by the decisions in *Jolly v. Atlantic Greyhound Corporation* or *Benbow v. Edmunds High School, supra.*

The respondent, pursuant to an agreement, drove a truck to transport goods, which was in the course of the trade and business of Coker Freight Lines, Inc. His employment did not happen by chance or accident. It was the result of an agreement between the parties to perform a part of the regular service and business of Coker. The fact that the respondent was injured shortly after his employment began does not make him a casual employee.

In the case of *Ward v. Ocean Forest Club, Inc.,* 188 S. C. 233, 198 S. E. 385, 388, this Court said:

" 'An employment is not rendered casual because it is not for any specified length of time, or because the injury occurs shortly after the employee begins work. *Industrial Commission v. Funk,* 1920, 68 Colo. 467, 191 P. 125. Nor does the fact that an injured employee was hurt upon the first day of his employment afford a test to determine whether his employment was casual. *Doherty v. Grosse Isle Tp.,* 1919, 205 Mich. 592, 172 N. W. 596.' Annotation, 33 A. L. R. 1453."

We think that the Industrial Commission and the trial Judge were correct in holding that the respondent was not a casual employee of Coker Freight Lines, Inc. If we had any doubt, which we do not, that the respondent was within the coverage of the Compensation Act, in order to effectuate the basic purpose of said act, we must resolve that doubt in favor of the respondent and find that he is covered by the said act. Doubt as to whether an employee is covered by the said act must be resolved in favor of coverage rather than exclusion. *Ham v. Mullins Lumber*

*Company,* 193 S. C. 66, 7 S. E. (2d) 712; *Adams v. Davison-Paxon Company,* 230 S. C. 532, 96 S. E. (2d) 566.

Upon the call of this case for hearing in this Court, the respondent made a motion to be allowed to exhibit to the Court the manifest issued by Coker Freight Lines, Inc. and the rules and regulations of the Interstate Commerce Commission, to which reference has been made in this opinion. We hold that it was proper to allow the respondent to include these exhibits as a part of the record.

The exceptions of the appellants are overruled and the Order appealed from is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.