18862

Richard J. YOUNG, Respondent, v. Rivers A. WARR, Sr., Administrator of the Estate of Rivers A. Warr, Jr., Appellant

(165 S. E. (2d) 797)

180

*Messrs. C. Dexter Powers, Wright, Scott, Blackwell & Powers and George W. Keels,* of Florence, and *Paul A. Sansbury,* of Darlington, *for Appellant,*

184

*Messrs. James P. Mozingo, III, D. Kenneth Baker, and Greer & Chandler,* of Darlington, and *Edward E. Saleeby,* of Hartsville, *for Respondent,*

January 22, 1969.

Moss, Chief Justice.

This is an action instituted by Richard J. Young, the respondent herein, seeking damages for injuries sustained

by him on December 30, 1964, near Weldon, North Carolina, when the station wagon automobile in which he was a passenger collided with the rear of a tractor-trailer truck on U. S. Interstate Highway No. 95. At the time of the collision the said station wagon automobile was being driven by Rivers A. Warr, Jr., who lost his life in the collision and, thereafter, his father, Rivers A. Warr, Sr. was appointed administrator of his said estate and, as such, he is the appellant herein.

The complaint alleges a cause of action based upon the negligence, recklessness, willfulness and wantonness of the appellant's intestate in the operation of the said station wagon automobile. The answer of the appellant asserted three defenses: (1) a general denial; (2) that the collision and the respondent's injuries were solely and proximately caused by the negligent, reckless and willful conduct of the driver of the tractor-trailer truck; and (3) that the respondent and the appellant's intestate and the other occupants of the automobile were all fellow employees of the Southeastern Reconditioning Center which was subject to the South Carolina Workmen's Compensation Act, and that by reason thereof the respondent was barred from bringing a common law action for damages against the appellant's intestate, his fellow employee.

This case came on for trial at the 1967 September Term of the Court of Common Pleas for Darlington County before The Honorable W. L. Rhodes, Jr., Presiding Judge, and a jury. During the trial counsel for both parties agreed that the appellant's third defense, concerning the Workmen's Compensation Act, presented an issue to be decided by the court rather than the jury, and all testimony and evidence relating to such defense were submitted to the presiding judge in the absence of the jury. After hearing the testimony with reference to the third defense, the presiding judge granted the respondent's motion to strike such from the appellant's answer.

At appropriate stages of the trial the appellant made timely motions for a nonsuit and directed verdict. These motions were refused by the trial judge and the case submitted to the jury which returned a verdict in favor of the respondent and against the appellant for $500,000.00 actual damages. Following the verdict, appellant made motions for a new trial absolute, a new trial *nisi* and for judgment *non obstante veredicto*. The motions for a new trial absolute or for judgment *non obstante veredicto* were denied by the presiding judge but he ordered that a new trial be granted unless the respondent, within ten days, remitted the sum of $100,000.00 of the aforesaid verdict in writing on the record of the case. The respondent filed his remittitur of the sum of $100,000.00 within the time limit. The appellant then gave timely notice of his intention to appeal to this court from the judgment and order of the lower court.

In his appeal, the appellant charges that the trial judge erred in refusing his motions for nonsuit and directed verdict and judgment notwithstanding the verdict or for a new trial absolute on the ground that the only reasonable inference to be drawn from the evidence is that the accident was solely and proximately caused by the negligence and recklessness of the driver of the tractor, trailer truck. The exception posing the aforesaid question was not argued in the brief of the appellant and this court considers such to be abandoned. *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15; and *Kolb v. Nash,* 245 S. C. 25, 138 S. E. (2d) 417.

The appellant urges that the trial court erred in refusing his motions for judgment *non obstante veredicto* or for a new trial absolute upon the ground that the amount of the verdict was so excessive as to indicate bias, prejudice, caprice, arbitrariness or misapprehension on the part of the jury.

The trial judge granted the motion of the appellant for a new trial *nisi* by reducing the verdict of the jury by requiring the remission of the sum of $100,

000.00 Our decisions hold that to warrant a trial judge in reducing an excessive verdict by granting a new trial *nisi* it is not necessary that he find the verdict to be so excessive as to indicate that it was a result of prejudice, caprice or passion or other consideration not founded on the evidence. Where the verdict is deemed excessive by the trial judge, in the sense that it indicates merely undue liberality on the part of the jury, the trial judge alone has the power, and with it the responsibility, of setting aside the verdict absolutely or reducing it by the granting of a new trial *nisi*. *Gray v. Davis,* 247 S. C. 536, 148 S. E. (2d) 682. It is only when the verdict is so grossly exceessive and the amount awarded so shockingly disproportionate to the injuries as to indicate that the jury was moved or actuated by passion, caprice, prejudice, or other consideration not found on the evidence that it becomes the duty of this court, as well as of the trial court, to set aside the verdict absolutely. *Ray v. Simon,* 245 S. C. 346, 140 S. E. (2d) 575. A verdict which may be supported by any rational view of the evidence and bears a reasonable relationship to the character and extent of the injury and damage sustained, is not excessive. *Watson v. Wilkinson Trucking Co.,* 244 S. C. 217, 136 S. E. (2d) 286.

The respondent, at the time of his injury, was a young man twenty-three years of age with a statutory life expectancy of 47.64 years. He had been married at that time approximately six months. He was a high school graduate and had completed 3½ years in the United States Navy and was in an advanced electronic school where he ranked at the top of his class. He was earning $345.00 a month plus the various additional benefits of service personnel with comparable status. The respondent was an intelligent and industrious young man with a bright future for the enjoyment of life and with a substantial future earning capacity. The injury he sustained was to his spine in the lumbar area, resulting in permanent paraplegia. As a result of the injury sustained he was hospitalized from December 1964 until October 1965. An attempt to learn to

walk with the use of braces and crutches was a failure and "phantom pain" developed in his lower limbs which will apparently be present for the balance of his life. The respondent will be permanently confined to a wheel chair. The respondent, as a result of his injury, has lost complete and permanent control of his bladder and bowel functions with all attendant inconvenience, embarrassment and hardship that such brings. The respondent has permanently lost all ability for sexual function, and it will be impossible for him ever to be the father of any children or have marital relations. The mental anguish, depression and frustration suffered by the respondent will continue all of his life. He will need periodic examinations and treatment for the balance of his life. He will need someone with him in the nature of a companion or practical nurse at all hours of the day and night. The pecuniary loss to the respondent is substantial and the intangible losses, such as pain and suffering, mental anguish, depression and the loss of social and business activities because of his physical conditions is evident.

The trial judge found that the verdict in this case was not against the weight of the evidence nor was it the result of passion, caprice, prejudice or misapprehension on the part of the jury of either the facts or the law. We have carefully considered the entire record in this case and agree with the trial judge that in view of the injuries sustained by the respondent it is not logical to conclude that the size of the verdict in this case was so excessive as to indicate that the jury was moved by passion or prejudice or other considerations not founded on the evidence. It is our conclusion that the Court below was correct in refusing to grant a new trial absolute or for judgment *non obstante veredicto* on the ground stated.

The next question for consideration is whether the trial judge committed error in refusing appellant's motions for directed verdict, judgment notwithstanding the verdict or for a new trial absolute on the ground that the respondent and appellant's intestate were fellow employees of South-

eastern Reconditioning Center, or of a sub-contractor thereof, subject to the South Carolina Workmen's Compensation Act, and in striking such defense from appellant's answer.

In the cases of *Nolan v. Daley*, 222 S. C. 407, 73 S. E. (2d) 449, and *Powers v. Powers*, 239 S. C. 423, 123 S. E. (2d) 646, we held that an employee, subject with his employer to the provisions of the Workmen's Compensation Act, whose injury arises out of, and in the course of his employment, cannot maintain an action at common law against his co-employee, whose negligence caused the injury. It is the position of the appellant that the respondent and his intestate were fellow employees of Southeastern Reconditioning Center and that the rule in the cited cases should be applied. It is the position of the respondent that he was acting as an independent contractor at the time of his injury and is, therefore, not precluded from maintaining this common law action against the appellant.

The courts have found great difficulty in laying down any hard and fast rule in determining whether the relationship of independent contractor has been established. The determination of the question in each case depends largely upon its own factual situation, subject to certain established general principles. The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." 56 C. J. S. Master and Servant § 3(1); and "where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent; and the relationship is one of agency

when the employer reserves control and an interest in the performance of the work other than the finished product. * * *". 2 C. J. S. Agency § (2d). *Bates v. Legette,* 239 S. C. 25, 121 S. E. (2d) 289. See also the cases of *Carter's Dependents v. Palmetto State Life Ins. Co.,* 209 S. C. 67, 38 S. E. (2d) 905; *Gomillion v. Forsythe,* 218 S. C. 211, 62 S. E. (2d) 297, 53 A. L. R. (2d) 169, and *Cooper v. Graham,* 231 S. C. 404, 98 S. E. (2d) 843, and *DeBerry v. Coker Freight Lines,* 234 S. C. 304, 108 S. E. (2d) 114. In the *DeBerry* case we said that the right of power of control retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee or an independent contractor.

The answer of the appellant alleged that the Court of Common Pleas was without jurisdiction to entertain this common law tort action for the reason that the respondent and appellant's intestate were fellow employees of Southeastern Reconditioning Center and, by reason thereof, were subject to the South Carolina Workmen's Compensation Act. It was agreed that the applicability of the Workmen's Compensation Act presented an issue to be decided by the court rather than the jury, and all the testimony relating to this defense was submitted to the presiding judge. When the trial judge decided the issue relating to jurisdiction in this case he followed the rule approved by this court of whether the claim of the injured workman is within the jurisdiction of the Industrial Commission is a matter of law for decision by the court, which included the finding of facts which relate to jurisdiction. *Bridges v. Wyandotte Worsted Co.,* 243 S. C. 1, 132 S. E. (2d) 18. The trial judge found as a fact that the evidence preponderates in favor of the conclusion that the respondent was an independent contractor rather than an employee of Southeastern Reconditioning Center.

Southeastern Reconditioning Center was in the business of reconditioning Chrysler automobiles for resale purposes

and had such automobiles driven to Darlington, South Carolina, from various places in the eastern portion of the United States, including Washington, D. C. Edward J. Young, father of the respondent, was employed by Southeastern to be in charge of the various drivers traveling to pickup points where they received the cars for the purpose of driving them back to Southeastern's premises at Darlington, South Carolina. The compensation of the drivers was a lump sum based on distance and time and included expense money. The compensation of a driver of an automobile from Washington, D. C. to Darlington, South Carolina, was $30.00, $5.00 of which was expense money. The foreman of a crew of drivers was given a check to cover the wages and expenses of all drivers on a trip and he cashed such check and paid each driver in cash at the conclusion of the trip.

Richard J. Young was the son of Edward J. Young and was a member of the United States Navy, stationed at the Naval Air Station in Jacksonville, Florida, and in December, 1964, he was on a sixteen day Christmas leave and came to Darlington primarily to visit his father. The father was working through the Christmas season and the respondent, in order to spend some time with his father, made a few trips to drive cars back to Darlington. The son never discussed with his father any employment by Southeastern and never talked to anyone at Southeastern about being employed by it. He never agreed to but one trip at a time and signed a contract specifically providing that he was an independent contractor on each occasion. The said contract being in form as follows:

"In consideration of the sum of ――― Dollars, receipt of which is hereby acknowledged as full payment of *agreed contract price* for driving, towing, steering or otherwise participating in the transportation of ――― from ――― to ―――, I hereby agree to transport aforesaid vehicle or other merchandise, and I hereby release you from all claims which I might, except for this release, have or hereafter may have, and from any liability, whether imposed by common

law or by statute, on account of any accident which may occur and/or any injury which I may sustain in the course of carrying out the above undertaking, it being agreed that I am assuming all the risk of this undertaking and *that I am acting as an independent contractor."* (Italics added)

It appears from the testimony that when the crew of drivers arrived at the place where the automobiles were to be picked up and driven back to Darlington, South Carolina, that each driver, before the said automobile was turned over to him, was required to sign the contract hereinbefore quoted, with appropriate insertions of data, including the lump sum of money to be received as full payment of the agreed contract price for driving, together with the serial number of the car turned over to a particular driver and the departure point. A contract was made by each driver with reference to each specific automobile and the foreman of the crew of drivers gathered up all of the signed contracts and mailed such from the point of departure to Southeastern at Darlington, South Carolina. The reason the foreman of the crew of drivers was required to mail such signed contracts was in case something happened to the foreman and he didn't get back.

J. C. Clanton, an officer of Southeastern, admitted the form of contract hereinbefore quoted was prepared by his office and that he was familiar with the contents of the form and knew what the term "independent contractor" meant. The trial judge found that the aforesaid form was a studied design to make the respondent an independent contractor. The design was carried out by the execution of such written contract and that a successful attack upon this relationship has not been made in this case.

The record shows that Southeastern, sometime in October 1964, began full scale operation in reconditioning automobiles for resale and, for eight to ten weeks prior to the collision with which we are concerned, it had used more than sixty drivers in transporting automobiles and a substantial

number of said drivers so used were regularly employed in other occupations and businesses. Each driver was specifically required, at the point of pickup, to enter into a new contract, in the form above set out, for each trip. It further appears that the drivers for a particular trip never assembled at the premises of Southeastern but would gather at a restaurant in Darlington and would be transported from that point by an employee of Southeastern, without charge and without payment of compensation, to the point where the automobiles were to be picked up. It is undisputed that Southeastern never deducted from the agreed contract price to be paid to each driver any amount for Federal withholding or Social Security taxes. The record shows that all regular employees of the company were paid by check at the company office and that Social Security and withholding taxes were deducted from the wages so paid.

The record shows that on December 30, 1964, that Edward Young, together with a group of eight drivers, left Darlington for Washington to pick up used cars for reconditioning by Southeastern. They were traveling in a station wagon automobile bearing the dealer tags of Southeastern but owned by Chrysler Leasing Company. It is admitted that contracts, in the form hereinbefore set out, had already been prepared in the handwriting of Edward Young and they were ready for the drivers' signatures when they got to Washington. These prepared forms were found in the station wagon automobile at the scene of the collision. The respondent would have been required to sign the form before he was allowed to drive any car back to Darlington. The respondent had never worked for Southeastern in any capacity before making these trips with his father while on leave from the Navy, and he was to return to service on December 31, 1964.

J. C. Clanton testified that the cars brought from Washington to Darlington were owned by Chrysler Leasing Company and Southeastern had an independent contract to bring these cars in for reconditioning. He further testified

that Southeastern employed the drivers to drive these cars from the point where they were picked up to Darlington. He stated that the rules and regulations governing such drivers were that they were to obey all traffic regulations and were not to partake of intoxicating beverages; that they were to follow a described route and required to wear seat belts. The only rules testified to by Edward J. Young, who had charge of the crew of drivers, was that there would positively be no drinking by any of the drivers and each was to observe the speed limit posted in each state through which he traveled. There is no testimony that the respondent was told of any of these rules and regulations. As a matter of fact, J. C. Clanton admitted that he never had any conversation with reference to the duties of or the employment of the respondent.

In the case of *McDowell v. Stilley Plywood Co.,* 210 S. C. 173, 41 S. E. (2d) 872, this court held:

"In the absence of a statutory provision to the contrary, an injured person who is not an employee, but an independent contractor for the work, is not within the scope of a compensation act; and when it appears that the parties have contracted for the performances of work under circumstances which the courts have determined constitute the worker an independent contractor, an industrial commission has no further powers, and must dismiss the claim. Even though the contract is unfair to the worker, and a studied attempt to avoid the provisions of the compensation act, it bars his claim to compensation if it makes him an independent contractor; and a worker has a right to make such a contract."

The contract entered into by the parties must be considered in determining the nature of their relationship and has considerable weight. While neither of the parties controlled the legal effect of the contract, the primary test of its character is the intention of the parties which is to be gathered from the whole scope of the language used. In *Moeller v. DeRose,* Cal. App., 222 P. (2d) 107,

it was held that the belief of the parties to the contract as to whether the relationship between them was that of employer and employee or was that of independent contractor, as indicated by their actions, was entitled to some weight in determining the nature of relationship. It appears from the provisions of the contract and from all attendant circumstances that Southeastern intended to create the relationship of employer and independent contractor. The respondent acquiesced in such.

The appellant contends that the relationship between the respondent and Southeastern was that of master and servant. It is argued that Southeastern reserved the right of control and direction over the respondent by requiring his adherence to the rules and regulations governing such drivers, which included obedience to all traffic regulations and that such drivers were not to partake of intoxicating beverages and were required to wear seat belts. In *Persons v. Raven,* 187 Or. 1, 207 P. (2d) 1051, it was held that the issuance of safety regulations by a lumber company to an independent contractor operating log trucks could not be regarded as the giving of directions so as to change their status to that of servants. In the case of *Dave Lehr, Inc. v. Brown,* 127 Tex. 236, 91 S. W. (2d) 693, it was held that where the alleged employer reserved the right to refuse to give a truckman further work if he disobeyed traffic rules had no substantial evidentiary value in determining whether employer-employee relation existed. In *Gall v. Detroit Journal Co.,* 191 Mich. 405, 158 N. W. 36, 19 A. L. R. 1164, it was held that where a written contract defined the carrier's status as an independent contractor that the mere posting of notice not to exceed the legal speed limit, although the company might exercise the right to terminate the contract if the directions were not complied with, was not an exercise of control but only a direction not to do a thing the carrier had no right to do.

The right on the part of Southeastern to designate the place where the automobiles were to be picked up and the

route to follow in delivering the cars to Darlington was but a right to designate the result to be obtained and did not give Southeastern any control for the obtaining of that result.

The mere fact that one of the contracting parties is empowered to give general directions as to what is to be done without control of the method or means of doing it does not necesarily have the effect of creating the relation of principal and agent or master and servant because such relates only to the result to be attained. It was stated in *Rogers v. Florence Railroad Co.,* 31 S. C. 378, 9 S. E. 1059, that the reserved control, to have the effect of making the relation that of employer and employee "must be both general and special, and not only as to what work shall be done, but also how it shall be done." Here, the evidence is susceptible of the conclusion that Southeastern was interested only in the result to be attained but had no supervision or control over the details of how the respondent would perform the work.

Admittedly, the respondent was to be paid a lump sum for his services in driving an automobile from Washington to Darlington. There is also evidence that Southeastern did not withhold income tax nor deduct social security taxes from the amount to be paid to him. These factors, are not, in themselves conclusive evidence that the respondent was an independent contractor but are circumstances to be considered along with all other evidence in determining what the relationship between Southeastern and the respondent was. 41 Am. Jur. (2d), Independent Contractor, Sections 14 and 22.

As a general rule, where the evidence relating to an independent contractor or employee is conflicting, or if not conflicting, where more than one inference can be derived therefrom, the question is one of fact. The trial judge has found as a fact that the respondent was an independent contractor rather than a servant of Southeastern. Under the facts hereinbefore recited, we think there was no

error on the part of the trial judge in reaching such a conclusion.

Having concluded that the trial judge was correct in finding that the respondent was an independent contractor rather than a servant of Southeastern, it is unnecessary for us to consider the exception alleging error on the part of the trial judge in striking the third defense of the appellant on the ground that the respondent was a casual employee.

The appellant attempted to show by cross-examination of the respondent that he was still in the Navy, drew his regular pay until June 17, 1965, and since that time has a base pay and allotment of $700.00 per month from the Veteran's Association. The trial judge sustained the respondent's objection to this testimony and the appellant alleges that such was error. The question presented is whether the tort feasor is entitled to a credit, in reduction of damages, for payments received from a collateral source wholly independent of the wrongdoer.

Under the "collateral source rule", a tort feasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source. As stated in 25 C. J. S. Damages § 99(1):

"Under the collateral source rule or doctrine, which is a well-established rule in the law of damages, a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged."

The rationale of the foregoing rule is also set forth in 22 Am. Jur. (2d), Damages, Section 206, and also in 7 A. L. R. (3rd), page 522, Section 3(b).

In the case of *Bell v. Primeau,* 104 N. H. 227, 183 A. (2d) 729, 7 A. L. R. (3d) 512, it appears that three actions

were instituted to recover for personal injuries resulting from automobile accidents to servicemen. The plaintiffs had continued to receive their compensation from the government during their disabilities. The trial court excluded evidence of loss of earning capacity and denied requested instructions which would have permitted assessment of damages for such loss. The Supreme Court of New Hampshire held that the plaintiffs in a tort action for personal injuries could recover for loss of earning capacity even though they continued to receive their compensation from the government during their disabilities. In *Cunnien v. Superior Iron Works Co.*, 175 Wis. 172, 184 N. W. 767, 18 A. L. R. 667, it was held that the amount awarded one enlisted in the United States Navy for loss of time because of injury negligently inflicted upon him by a third person should not be deducted from the total amount awarded him as damages for the injury, although he continued for a time to draw his pay from the government and received an allowance for vocational rehabilitation under the federal statutes.

In our own case of *Powers v. Temple*, 250 S. C. 149, 156 S. E. (2d) 759, we applied the "collateral source rule" and held that it was error on the part of the trial judge to allow the defendant, over objection by the plaintiff, to bring out on cross-examination that her salary had been paid by her employer during the period of disability. We conclude that there was no error on the part of the trial judge in sustaining the objection of the respondent in the admission of the foregoing testimony.

The next question for determination is whether the trial judge committed error in his rulings concerning other remedies that the respondent might have.

It appears from the record that during the opening argument for the respondent that his counsel stated, in effect, "He can never apply for Workmen's Compensation benefits; this is his only remedy." Counsel for the appellant

objected to this argument on the ground that the respondent could have other remedies.

The trial judge had ruled as a matter of law that the respondent was an independent contractor and was not an employee of Southeastern and hence was not entitled to any benefits under the Workmen's Compensation Law. In view of this ruling, which we have heretofore held to be correct, the respondent could never apply for Workmen's Compensation benefits. It should be remembered that the appellant had asserted as a defense that the respondent and the appellant's intestate were fellow employees and were barred from suing each other because they were both subject to the Workmen's Compensation Act. The trial judge instructed the jury that the respondent had a right to bring this action and was not required to proceed under the Workmen's Compensation Act. There was nothing improper in the argument of counsel that the respondent could never apply for Workmen's Compensation benefits.

Appellant's counsel was not permitted to argue that "If the driver of this truck were negligent, the plaintiff also has a cause of action against him." It is asserted that this was error. The court, in sustaining the objection, held that this argument was misleading and improper to suggest that the respondent "could turn around and sue the truck driver." The question of whether the respondent could later bring action against the truck driver, assuming that he was negligent, was not an issue in the instant case and it was so held by the trial judge, and we think properly so.

It is asserted that one of the attorneys for the respondent, in his closing argument, in effect stated: "Richard Young, whose father testified against him; what a cold, cruel world this is." When this argument was made, counsel for the appellant stated: "If your Honor please, I don't think that remark is called for under the testimony." It appears that Edward J. Young was subpoenaed by and placed on the

witness stand by the appellant. The court overruled the objection of the appellant with the statement " I think the observation can be made that he testified for one side or the other".

We have held that the proper course to be pursued when counsel makes an improper argument is for opposing counsel to immediately object and to have a record made of the statements or language complained of and to ask the court for a distinct ruling thereon. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335. However, we must leave the control of argument of counsel very much to the discretion of the trial judge who is on the scene of action and is in a much better position than we are to judge as to what is improper argument. *Shearer v. DeShon,* 240 S. C. 472, 126 S. E. (2d) 514. In this case the trial judge heard the remarks made by counsel for the respondent, the context in which such was used, and did not construe such to be improper. We find no abuse of discretion on the part of the trial judge in his ruling thereabout.

The appellant, by its third defense, alleged that the respondent and the appellant's intestate were fellow employees of Southeastern and were subject to and covered by the South Carolina Workmen's Compensation Act and that by reason thereof the respondent was barred from bringing a common law action for damages against appellant's intestate, his fellow employee. It was agreed by counsel for all parties that the appellant's third defense presented an issue to be decided by the court rather than the jury and all testimony relating to such defense was submitted to the presiding judge in the absence of the jury. The trial judge concluded that the respondent was an independent contractor and was not a fellow employee of appellant's intestate. The trial judge, prior to the argument of this case to the jury by counsel for the parties, advised the jury of the contents of the third defense and that he had ruled as a matter of law that such defense was not applicable in this case. He further ruled that the respondent had a right to bring this action

and was not required to proceed under the Workmen's Compensation Act.

The trial judge, in his regular charge in discussing the issues in the case, again told the jury "So that there will be no misunderstanding about this" that he had stricken the third defense as a matter of law from the evidence which he had heard in the absence of the jury.

The appellant asserts that the court erred in charging the jury on two occasions that he had stricken the third defense asserted by it and in refusing appellant's request to charge the jury to disregard all argument, testimony and prior charges concerning said defense.

One clear statement of a proposition of law would seem to be enough. However, a judgment will not be reversed because of repetition in a charge to the jury unless such repetition is prejudicial and it reasonably appears that the jury was mislead thereby. The repetition of correct instructions so that the jury may have the matter firmly in mind is not erroneous. 88 C. J. S. Trial § 334. We do not think the trial judge erred in twice telling the jury that he had stricken the third defense asserted by the appellant.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.