### HINSON *ET AL* v. ROOF

(122 S. E., 488)

1. Husband and Wife—Evidence as to Timber Contract With Defendant's Husband Authorized Submitting to Jury Issues of Implied Agency and Estoppel.—Evidence that plaintiff made a contract to cut and saw timber with defendant's husband, believing that husband owned land which was owned by defendant, that defendant came down to the sawmill with her husband while it was being operated on her land, and made no protest, and husband paid her the greater part of the proceeds from the lumber sales, *held* to authorize submission to jury of issues of implied agency and estoppel.

2. Principal and Agent—Agency Question of Fact for Jury, Where There is Evidence From Which Inference May be Drawn.—Existence of agency is a question of fact to be determined by the relation, the situation, the conduct, and the declarations of the party sought to be charged as principal, and, if there is in evidence any facts from which inference of such agency may legitimately be drawn, question is for jury.

3. Appeal and Error—Charge to Which No' Exception is Taken Becomes Law of Case.—A charge to which no exception is taken becomes the law of the case.

---

Note: On proof of husband's agency for wife by evidence of similar acts by alleged agent, see note in 17 L. R. A. (N. S.), 223.

ɔ

Before DENNIS, J., Lexington, March, 1923. Affirmed.

Action by M. C. Hinson and others against Mrs. Lilly Roof. Judgment for plaintiffs and defendant appeals.

*Messrs. Martin & Sturkie* and *Timmerman & Graham,* for appellant, cite: *Contract between husband and another enforceable against wife:* 79 S. C., 174; 3 Code 1922, Section 5915. *No proof of agency:* 31 Cyc., 1631; 3 Brev., 475; 114 S. C., 591. *Proof necessary to establish agency:* 2 C. J., 917; 5 S. C. L., 475; 2 C. J., 476; 36 S. C., 384; 30 S. C., 121; 3 S. C. Eq., 393. *What amounts to ratification:* 31 Cyc., 1647; 114 S. C., 491. *Sale of timber within Statute of Frauds:* 17 R. C. L., 1068; 2 C. U., 485.

*Messrs. Cooper & Winter,* for respondent, cite: *Question of agency is one of fact for jury:* 114 S. C., 491; 98 S. E., 847; 61 S. E., 82; 90 S. E., 155; 105 S. E., 749. *Defendant acquiesced in and ratified acts of her husband:* 75 S. E., 700; 114 S. C., 591; 36 S. E., 397; 100 S. E., 689; 93 S. E., 984. *Part performance took contract out of Statute of Frauds:* 2 S. E., 859; 71 S. C., 825; 1 S. E., 366. *Measure of damages:* 2 Sedj. Dam., 614; 3 Ell. Cont., 2138, 2149; 13 C. J., 796; 8 R. C. L., 511; 58 S. C., 373; 51 S. C., 143; 39 S. C., 427; 5 Am. Dec., 177; 11 Sou., 60; 150 Pa., 769; 75 N. E., 214.

March 10, 1924.

Petition for rehearing dismissed April 23, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $4,081.22 damages on account of the alleged breach of a contract relating to the cutting and sawing of certain timber. The facts appear as follows: The defendant, Lillie Roof, owned a tract of land in Lexington County upon which there was a large body of timber. The plaintiffs owned a sawmill outfit and were engaged in that business. On April 16, 1921, the plaintiffs entered into a written contract with C. S. Roof,

the husband of the defendant (as if he had been the owner of the land), by which the plaintiffs agreed to cut the timber upon a certain piece of land, described as the property of C. S. Roof, at an agreed compensation.    The plaintiffs moved their outfit upon the land and began operations. After they had been operating about six weeks, having cut and sawed a considerable quantity of timber into laths and lumber by reason either of his dissatisfaction with the manner of the sawing or of a fall in the market price of the product, C. S. Roof demanded a reduction in the agreed price of cutting and sawing, or an abandonment of the contract.    The plaintiffs declined to accede to his demand, whereupon C. S. Roof ordered them off of the place. In the meantime it appears that C. S. Roof had settled with the plaintiffs for the work done up to that time.    The plaintiffs moved off, and instituted this suit for loss of profits which they would have made if they had been allowed to complete the contract.    When the suit was about to be commenced, the plaintiffs learned for the first time that the land belonged to Mrs. Roof and not to C. S. Roof, who had entered into the contract.    They accordingly brought suit against Mrs. Roof, upon the written contract, alleging that in the making of it C. S. Roof acted as the agent of his wife.    Mrs. Roof, in her answer, denied that C. S. Roof was or acted as her agent in the matter and denied all connection with or liability upon the contract.

The evidence tended to show that the plaintiffs acted upon the belief that the land belonged to C. S. Roof; that, while they were operating, Mrs. Roof came down to the sawmill with her husband and observed the mill in operation; that the laths and lumber turned out by the plaintiffs were hauled away by C. S. Roof and sold; that he paid the larger part of the proceeds to Mrs. Roof; that she was fully aware of the location of the plant and of the plaintiffs' operations; that her husband negotiated the transaction by which the land was bid off by him at public sale

and the title made to her; that he transacted business for her. From the relations of the husband and wife, her ownership of the land, her statement that Mr. Roof attended to the greater part but not all of her business, her admitted knowledge of the operation, her acceptance of a part of the proceeds of the sale of the product, it may not have been an unreasonable inference that she was fully aware of the terms of the contract under which the plaintiffs entered upon the land.  It certainly does not appear that after knowledge she made any objection to their operations.

Both Mr. and Mrs. Roof testified that she had previously (verbally) sold all of the timber covered by the contract to him.  In the absence of any circumstantial details of such sale in the matter of time, place, terms, or performance, the jury was not obliged, or we may say reasonably expected, to accept that statement.

At the close of the evidence for the plaintiffs the defendant moved for a nonsuit, and at the close of all of the evidence, for a directed verdict, upon the ground that there was no evidence to connect the defendant with the contract or to show any liability upon her.  The motions were refused. His Honor, the presiding Judge, held that there was sufficient evidence of the husband's agency, the estoppel upon the defendant, and her ratification of his action in executing the contract, to require submission of these matters to the jury and charged them upon those issues.  The jury rendered a verdict in favor of the plaintiffs for $1,168.72, and from the judgment entered thereon the defendant has appealed.

The main question upon this appeal is whether or not the evidence was sufficient to require a submission to the jury of the following issues:

(1) Did C. S. Roof act as agent for his wife in making the contract?

(2) If not, is the defendant estopped by her conduct in denying the fact of such agency?

(3) Did the defendant by her conduct ratify the contract made by her husband?

The existence of an agency is a question of fact to be determined by the relation, the situation, the conduct, and the declarations of the party sought to be charged as principal. If there be in the evidence any facts from which the inference of such agency might legitimately be drawn, the question is one of fact for the jury.

While, of course, the existence of the marital relation is not of itself an indication that the husband dealing with the wife's property was acting as her agent, it is a circumstance, from the intimate and normally confidential character of the relation, proper to be considered. It is highly improbable that a husband would conceal or attempt to conceal his dealings with the wife's property, particularly where such dealings were open and impossible of concealment; in the case at bar they were actually known to the wife. There is evidence tending to show that the wife visited the sawmill with her husband and observed it in actual operation; that she sat silent and made no objection; that all the while during the six weeks of operation she knew that the plaintiffs were cutting down her trees and sawing them up into laths and lumber; she must have known that the husband was hauling the lumber away and selling it; a part, the husband says nearly all of the proceeds of the sale were paid to her; not a word of protest came from her; she says that her husband attended to some of her business for her. She attempts to explain these circumstances, in which she is corroborated by her husband, by testifying that she had previously sold the timber to him and that it was a matter of no concern to her what he did with it. The jury may have disbelieved this testimony; they may have concluded that it was an afterthought; and, in view of the indefinite character of the testimony as to such sale, we cannot say that such a conclusion would have been an unnatural one. There was, therefore, some evi-

dence upon the issues of implied agency and estoppel for the jury. She knew that the plaintiffs were operating upon land belonging to her; she is obliged to have inquired of her husband why they were there. If she was informed by him and allowed the plaintiffs to operate at trouble and expense, without objection and accepting the fruits of their labor, there is certainly some evidence to fix estoppel upon her.

In *Simes v. Rockwell,* 150 Mass., 372; 31 N. E., 484, the Court says:

"When a husband acts for his wife in the management or disposition of her farm, and when his action naturally tends to accomplish her known wishes in regard to it, it needs but little evidence to warrant an inference that it was authorized by her"—citing *Arnold v. Spurr,* 130 Mass., 347; *Wheaton v. Trimble,* 145 Mass., 345; 14 N. E., 104; 1 Am. St. Rep., 463.

In *Lunge v. Abbott,* 114 Me., 177; 95 Atl., 942, the Court says:

"The fact of agency can be established by proof of any facts or circumstances from which agency can reasonably and logically be inferred. The marriage relation of the parties, however, is not necessarily enough to establish the fact that the one is the agent of the other. There must be other proof. But, where the question is whether a husband was the agent of his wife in transactions for the repair and improvement of her property, the marriage relation, and the wife's situation and the condition of her health at the time, are of significance, in connection with the nature of the work contraced for."

In *Boland v. Klink,* 63 Ga., 447, it is said:

"Generally, when a wife wants an agent to represent her in a business transaction, she will select her husband."

See, also, *Kuenzel v. Nicholson,* 155 Mo., 280; 56 S. W., 1076. *Rauer v. Berthiaume,* 21 Cal. App., 670; 132 Pac., 596, 833. *Rathke v. Tyler,* 136 Iowa, 284; 111 N. W., 435.

*Maxey v. Burnham,* 89 Me., 538; 36 Atl., 1003; 56 Am. St. Rep., 436. *Swatts v. Harrison,* 19 Ga., App., 217; 91 S. E., 337. *Helwig v. Fogelsong,* 166 Iowa, 715; 148 N. W., 990. *Chamberlain v. Brown,* 141 Iowa, 540; 120 N. W., 334.

The question is concluded by the case of *Bethea v. Lumber Company,* 111 S. C., 97; 96 S. E., 717. That case apparently, although the report does not so state, was one in equity for injunction and to declare a timber contract abandoned or forfeited. The land belonged to the wife, and the lumber company claimed the right to extension of the time allowed for cutting and removing the timber by virtue of the payment of interest to, and a receipt therefor by, the husband of the owner of the land with whom the contract had been made. Two questions arose: (1) Whether or not the husband acted as agent for the wife. (2) Had the wife ratified the act of the husband? The husband testified that his wife did not tell him to receive the interest money; that he paid no part of it to her; that he did not tell the grantee that he was acting for her. Upon the first point the Court held that the evidence was not sufficient to establish the agency. The case was one in equity, and the Court was deciding the issue of fact as to agency. It did not hold that there was no evidence tending to establish the fact, which is all that is required to prevent a nonsuit or directed verdict in a law case. Upon the other point the Court held:

"But there is proof that she ratified his act, and a subsequent ratification is equal to a previous command. The ratification consisted in the wife's knowledge that the husband had undertaken to act for her in two instances, and her failure, for two years in one instance and one year in the other instance, to repudiate his action. It is true that, where no agency actually exists, the presumption of ratification arising from silence of the principal is less strong than it is where an agency does exist. But where there is

a peculiar relationship betwixt the principal and agent, like that of husband and wife, presumption of ratification arising from silence becomes stronger [citing authorities]. In the instant case, the wife admits that she knew her husband got the interest money and for an extension, and that he accepted and used it. The wife's testimony beyond cavil concludes her present right. It is plain that with full knowledge of what her husband had done, and the effect of his doing it, she thereby ratified his act"—citing authorities.

The Circuit Judge charged the jury in the case at bar:

"I charge you that if you find by her acts and conduct that she ratified that contract it is as binding on her as if in the first instance she had signed the contract or authorized some one else in writing to sign it for her."

And to this charge there is no exception. It, therefore, has become the law of the case, and we cannot say that there was no evidence in the case to sustain a conclusion that Mrs. Roof knew of the contract, of its performance, made no objection, received the fruits of it, and, therefore, ratified it. There certainly was some evidence, stronger than in the *Bethea Case*, tending to establish ratification, and the Circuit Judge properly left that matter to the jury.

We deem it proper to say that in neither of these cases (the *Bethea Case* and the case at bar) was the point suggested that where the contract was made by the supposed agent in his own name, touching the supposed principal's property, the doctrine of ratification has no application (31 Cyc., 1251; 21 R. C. L., 923); that question is, therefore, reserved.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES FRASER and MARION concur.

MR. JUSTICE WATTS dissents.

MR. CHIEF JUSTICE GARY did not participate.