## 17315

JOHN HENRY COOPER, a Minor of the Age of Fourteen (14) years, Appellant, v. LYNWOOD (LENWARD) M. GRAHAM and BEARD OIL CO., Respondents.

(98 S. E. (2d) 843)

*J. Clator Arrants, Esq.,* of Camden, *for Appellant,*

406

*Messrs. Frank E. Rector* and *Harold W. Funderburk,* of of Camden, *for Beard Oil Company, Respondent,*

*W. R. Gettys, Esq.,* of Camden, *for Respondent, Lynwood (Lenward) M. Graham,*

June 25, 1957.

Moss, Justice.

This action was instituted by the appellant, John Henry Cooper, a minor of the age of fourteen years, through his Guardian *ad Litem,* to recover damages for personal injuries sustained by him on February 22, 1955, by reason of an

explosion which took place at a filling station owned by Beard Oil Company and operated by Lynwood M. Graham, the respondents.

At the time of the injuries to the appellant, he was employed at the filing station owned and operated as aforesaid.

The complaint alleges that Lynwood M. Graham was the agent of Beard Oil Company and by reason of the negligence and willfulness of both the respondents, that the appellant sustained his injuries. There are ten specifications of negligence and willfulness in the complaint, seven of which are directed to the conduct of Beard Oil Company, two as to Lynwood M. Graham and one as to both respondents. The specifications of negligence and willfulness charged against Beard Oil Company are that it built and constructed a grease pit in connection with the filling station that was highly dangerous to the appellant, and installed an electrical outlet therein when it knew, or with the slightest degree of care, could have known that combustible and explosive materials were going to be used in said pit; that it equipped the said grease pit with faulty and dangerous appliances when the same was to be used with highly combustible and explosive gasoline; that it failed to properly inspect and maintain the said pump, extension and outlet located in said grease pit; that it failed to inspect or remove entirely the faulty electrical outlet, extension and pump installed in said pit, when it had notice by reason of a previous explosion at another station owned by it, similarly equipped to the station in question, with a faulty electrical outlet, extension and pump; that it failed to instruct its agent, Lynwood M. Graham not to employ infants who had no knowledge of the dangers of said pit and that it failed to provide the appellant a reasonably safe place in which to work. Two of the specifications charged negligence and willfulness on the part of Lynwood M. Graham in directing the appellant into the grease pit when he knew the same was highly dangerous, and that he failed to inspect the grease pit and the equipment used therein prior to requiring the appellant to use such defective equip-

ment. One specification of negligence and willfulness charges both respondents with owning, operating and maintaining a grease pit with appliances and equipment which were faulty and unfit to use and which were dangerous to the appellant when used.

The respondent, Beard Oil Company, answered the complaint, denying any relationship of principal and agent between Beard Oil Company and Lynwood M. Graham, and denied that the injuries sustained by the appellant were due to its negligence and willfulness. It also asserted, by way of answer, that Lynwood M. Graham operated the filling station as an independent contractor. The respondent, Lynwood M. Graham, also filed an answer, denying all allegations of the complaint charging him with negligence or willfulness, and sets up that he was not an agent of Beard Oil Company but was a lessee of the filling station premises and operated same as an independent contractor.

The case came on for trial in the Court of Common Pleas for Kershaw County, before Honorable G. Duncan Bellinger, Presiding Judge, and a jury. The testimony was taken in behalf of the appellant. At the close of appellant's testimony, the respondent, Beard Oil Company, moved for a nonsuit on the ground that there was no evidence of actionable negligence on its part and that there was no evidence establishing the relationship of principal and agent between Beard Oil Company and Lynwood M. Graham. Lynwood M. Graham also moved for a nonsuit on the ground that there had been no actionable negligence shown on his part. The motion as to Beard Oil Company was granted on the ground that the relationship of Beard Oil Company with Graham was that of an independent contractor. The trial Judge granted the motion of Lynwood M. Graham on the ground that there was no evidence of actionable negligence on his part.

The appellant, in due course, served Notice of Intention to Appeal from the Order of the trial Judge granting the motions for a nonsuit. The exceptions filed in this Court

raise the question as to whether the Court below committed error in granting the motions for a nonsuit.

The practical question to be answered in this case is whether or not the evidence produced by the appellant shows as a matter of law that Lynwood M. Graham was an independent contractor rather than an agent or servant of Beard Oil Company. If the only reasonable inference to be drawn from the evidence is that Graham was an independent contractor, then the trial Judge was correct in granting the nonsuit as to Beard Oil Company. If the evidence was not susceptible as a matter of law to this conclusion, then it was error for him to grant the order of nonsuit.

What is an independent contractor? It has been repeatedly said that it is almost impossible to prescribe a formula applicable to all the varying facts and circumstances, especially where the contract is oral, insofar as the testimony in this case reveals.

In the case of *Gomillion v. Forsythe,* 218 S. C. 211, 62 S. E. (2d) 297, 304, this Court, in an opinion by the Honorable L. D. Lide, Acting Associate Justice, said:

"Factual variation with reference to the elements involved in the many cases coming before the Courts is so great that it may be said that practically each case depends upon its own peculiar circumstances, subject only to certain general principles. The following, however, seems to be a comprehensive and correct statement, which may properly serve as a guide with regard to the evidence before the Court in this case, the same being quoted from 56 C. J. S., Master and Servant, § 3(1), p. 41: 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work; an independent contractor is not a servant, and there is no master and servant relation between his servants and the employer or contractee'."

It appears from the record that Beard Oil Company is engaged in the distribution of Sinclair products. It owned a filling station on U. S. Highway No. 1 where its products were sold and dispensed to the public. It appears from the evidence that Beard Oil Company erected the filling station in question. This filling station was equipped with a grease pit in order to service motor vehicles. Installed in said grease pit was an electrical outlet for making a connection with a pump for keeping waste oil, water and gasoline from accumulating in said pit. The record conclusively shows that Beard Oil Company owned all of the equipment used for dispensing gasoline and servicing motor vehicles. Graham, as the operator of the filling station, owned what is described as being "on the inside of the station." The appellant produced as a witness Ralph J. Hatfield, who had previously operated the filling station. He testified that he ran the station for Beard Oil Company under several financial arrangements. It appears that the final arrangement was that Beard Oil Company would fill up the gasoline tanks and come out each afternoon and get the money for the gasoline that had been sold on that particular day and Hatfield would keep the profit. He testified that this arrangement was in force and effect with the respondent Graham. He knew this because he worked there until approximately one week prior to appellant's injury. He further testified that Sanford Rollins, who worked for Beard Oil Company, would come out about six o'clock in the afternoon and pick up the money for the day. He further testified that Beard Oil Company owned all of the equipment in the filling station, that it inspected, maintained and repaired this equipment, and that when anything broke down Beard Oil Company was notified and they would make the necessary repairs. He further testified that no other brand of gasoline, other than Sinclair, was sold at the station. He further testified that the electrical outlet for making a connection with the pump located in the grease pit was an ordinary outside plug, located on the outside of the grease pit wall, and that the

cable from the pump would extend across the pit to the outlet. He further testified that in the event changes were to be made around the station that Beard Oil Company made them. He also testified that Beard Oil Company fixed the price at which gasoline was to be sold at the filling station. It is further in the testimony that when the arrangement was made whereby the representative of Beard Oil Company would check at the end of each day the gallonage sold and collect therefor, that he was not paying any rent for the station. He also testified that he did not know what arrangement Graham had with Beard Oil Company but he did know that Graham purchased from John Garganus, a previous operator of the station, for the sum of Five Hundred ($500.00) Dollars, what was "on the inside of the station." This was financed by Graham borrowing Five Hundred ($500.00) Dollars from the Auto Finance Company by mortgaging his automobile. The witness worked with Graham for a period of several weeks after this purchase and split the profits accruing from the operating of the filling station, he having agreed to pay half of the money expended by Graham for the purchase made from Garganus. He testified that when he quit working at the station, that John Henry Cooper, the appellant, was employed by Graham.

There was testimony by one Mendel B. Hatfield, who had been in the electrical contracting business, that this particular filling station was constructed by one Maxcey Berry for Beard Oil Company. He testified that the electrical outlet from the grease pit was an open socket and the "plug-in" was open for the connection, and when it was plugged in it would cause the gasoline fumes to ignite because there would be a spark when the motor was on starting point. He testified that there was nothing to protect the sparks from the electrical receptacle because it was wide open. He also testified that the morning after the appellant was burned he went to this particular filling station and that a Mr. Partin, an electrician who worked for Beard Oil Company, was there checking out the pump.

Appellant also produced as a witness one Gary Bradley, an electrical contractor with fifteen years experience, who had had occasions to wire grease pits. He testified that electricians have a certain code which they follow in wiring hazardous locations. He described a grease pit as coming within this definition because of the highly combustible fluids used therein. He testified that electrical outlets in a grease pit should be in an explosive proof enclosure. He further testified, when shown the open outlet that had been taken from the grease pit in question, that it was not a proper appliance because when it was plugged in an arc is created, which would ignite the fumes of gasoline in a grease pit. He further testified that an open outlet should never be used in a grease pit.

Appellant testified that he had been working at this filling station about one week when he suffered his injury. He says that he was instructed about closing time by Graham to get some gasoline and get in the grease pit for the purpose of washing it down. He says Graham was in the pit with him. He testified that the reason they were washing the grease pit was because Mr. Rollins, an employee of Beard Oil Company, told them that Mr. Beard was coming to check it the next day. Appellant says he did not want to get in the pit and wash it down because he knew another boy had been burned in one of Beard's filling stations. He says that he was inexperienced and did not know anything about electricity or grease pits. He also testified that he did not know anything was wrong with the pump or the electrical wiring. He testified that Graham left the grease pit and went to clean where they wash cars. He was instructed by Graham to turn on the pump for the purpose of pumping the contents of the pit. He says that "the plug had fell out of the wall" and Graham said "Lay it back in" and when he did, the explosion took place. He also testified that he was employed by Graham and did whatever work Graham instructed him to do. He testified further that he did not know anything about the arrangement between Graham and Beard Oil Company, except that every night a representative of Beard Oil Company would

check the pumps to see how many gallons had been sold and Graham would pay Beard Oil Company for it. The appellant also testified that on the last day he was in the hospital Graham visited him and asked him to sign a release of any action against Graham and Beard Oil Company, and the consideration for such signing to be the payment of medical and hospital bills. He further testified that Graham told him "That he had gotten the money to pay the hospital and doctor bills". His testimony further shows that after he was injured he was transported to the hospital by Sanford Rollins, who each evening checked the gallonage sold and collected therefor. It appears that Mr. Rollins lived just behind the filling station and arrived at the station shortly after the appellant was injured.

It is our duty, in determining whether there was sufficient evidence to be submitted to the jury on the question of whether Graham was the agent of Beard Oil Company, to consider such in the light most favorable to the appellant's case.

We can conclude from the evidence above recited that Beard Oil Company owned the filling station in question, and that possession thereof, with right to operate and sell Sinclair products was placed in Graham. We can also conclude that the grease pit was defectively equipped because of the installation therein of an electrical outlet that was improper and dangerous, and that Beard Oil Company should have, in the exercise of due care, known that the electrical appliances in the grease pit were defective, and upon use would probably cause injury. We also conclude that Beard Oil Company furnished the defective grease pit appliances to Graham to be used by him and his employees. We conclude also that Beard Oil Company did not keep the grease pit and its appliances in a suitable and safe condition for use. The testimony shows that it was the duty of Beard Oil Company to repair any defective appliances. The testimony is conclusive that Beard Oil Company furnished the Sinclair products for sale and fixed the sales price thereof,

and each evening a representative of Beard Oil Company would check the gallonage of gasoline sold and collect therefor. It further appears that Beard Oil Company had the right to inspect the premises and required that such be kept clean. It further appears that after the appellant was injured, that Graham attempted to obtain a release from the appellant exonerating, not only Graham, but Beard Oil Company, of liability for appellant's injuries.

It is here proper to observe that whatever contract existed between Beard Oil Company and Graham was not disclosed by the evidence. The evidence offered by the appellant does not reveal whether the contract was oral or written nor the terms thereof. All of the facts pertaining thereto were in the peculiar knowledge of the respondents.

When the appellant offered evidence showing that Graham was in the possession of the filling station for the purpose of selling Sinclair products delivered to him by Beard Oil Company, it is our opinion that he established a *prima facie* case, showing that Graham was the agent of Beard Oil Company.

In the case of *Norris v. Bryant,* 217 S. C. 389, 60 S. E. (2d) 844, 849, this Court said:

"The burden of proof was upon appellant to show that Bryant, the driver of the truck, was a servant of Grant but when he established that the truck was being used in the performance of the contract which Grant had with Poinsett, he established a *prima facie* case. It seems to be generally held that where a *prima facie* case of master and servant is made out, and the defendant claims that he is not liable because the work was being done by an independent contractor, the burden is on him to prove such relationship. 27 Am. Jur., Independent Contractors, Section 59, page 538; 57 C. J. S., Master and Servant, § 615(b), page 396. It has been said that 'the facts pertaining thereto being peculiarly within his (defendant's) knowledge, the law and justice require that he establish the alleged contract to the satis-

faction of the jury by the greater weight of the evidence. It would be unfair, and work a hardship if the burden should be put upon the plaintiff of disproving an alleged contract to which he is an entire stranger.' *Ember v. Gloucester Lumber Company*, 167 N. C. 457, 83 S. E. 740, 742. We do not now undertake to determine the correctness of the rule laid down by these authorities. It is sufficient to say that the burden of at least going forward with the evidence on the issue of independent contractor shifted to Grant."

As is heretofore stated, the evidence shows that Beard Oil Company was under the duty and obligation to maintain the filling station and make necessary repairs to the equipment. Such was the situation in *Gomillion v. Forsythe, supra,* and in relation to this matter, this Court said:

"There is another pertinent matter, which was not raised in the Court below, and was not mentioned in the argument here, which we are of opinion would preclude the direction of a verdict for the defendants, even if it were determined that Mr. Bell was an independent contractor. For the evidence shows as already recited that the defendants contracted to maintain the motor truck and keep it in good condition. And, as stated in 27 Am. Jur. 511: 'When such fact exists, a right of action accrues to a servant of the independent contractor, who is injured by failure of the employer to comply with the contract'.

"The statement just quoted is amply sustained by the Michigan case of *Johnson v. Spear,* 76 Mich. 139, 42 N. W. 1092, 15 Am. St. Rep. 298, wherein the pertinent facts and the holding of the Court are correctly stated in the syllabus as follows: 'Where the owner furnishes machinery to a contractor while work is being done upon his premises, and injury results through his fault in not keeping it in suitable and safe condition, he is liable to any servant of the contractor for an injury to him from defects therein, and his liability arises out of his obligation to provide safe appliances for the contractor to use, and to keep his premises

in safe condition, independent of any contract provision to that effect.' "

It is our conclusion that the trial Judge was in error in granting a nonsuit in favor of the respondents. We think that the question of whether Lynwood Graham was an independent contractor, or an agent of Beard Oil Company, was an issue that should have been submitted to the jury under all the facts and circumstances contained in the evidence.

We are satisfied the evidence is such as to require its submission to the jury as to both Graham and Beard Oil Company.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

Stukes, C. J., and Taylor, Oxner and Legge, JJ., concur.