17669

ZIV TELEVISION PROGRAMS, INC., Respondent, v. ASSOCIATED GROCERS, INC., OF SOUTH CAROLINA, Appellant

(114 S. E. (2d) 826)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. H. F. Partee and Ashmore & Bowen,* of Greenville, *for Respondent,*

June 14, 1960.

TAYLOR, Justice.

This appeal arises out of an alleged contract entered into for the purpose of advertising on certain television programs.

Plaintiff alleges that Greenville Progressive Grocers' Cooperative Association agreed to pay the sum of $101.25 for each of 52 programs for a total of $5,265.00, that said contract was executed on behalf of Greenville Progressive Grocers' Cooperative Association by Miss Jack Burford, the alleged advertising manager, and that such contract was signed while acting within the scope and course of her authority as such.

Defendant denies that it entered into the alleged agreement, states that Miss Burford was at no time its advertising manager, that if she signed or executed the said contract she was not acting within the scope and course of her authority, and further, that it had not received any film or other material as a result of the alleged contract.

Motions for nonsuit and directed verdict were duly made by the defendant and refused. Plaintiff moved for a directed verdict upon the ground that the only reasonable inference to be drawn from the testimony was that Miss Jack Burford was the authorized agent of the defendant corporation and signed the contract under her actual or apparent authority.

The trial Judge granted plaintiff's motion in the amount sued for; and defendant appeals, contending that the evidence does not establish as a matter of law that Miss Burford who allegedly signed the contract had authority to do so, actual or apparent.

Upon appeal, it is conceded that plaintiff's case must stand or fall upon Miss Burford's apparent authority rather than actual authority.

Approximately 70 or 80 retail grocery stores banded together as Greenville Progressive Grocers' Cooperative Association, later changed to Associated Grocers, Inc., of South Carolina, for the purpose of buying in greater quantities and thereby being in position to sell more advantageously the various items sold in their retail stores. About 20 of the group formed an organization for the promotion of sales by advertising in the newspapers weekly bargains at their retail stores. This group was known as The Topper Stores and all belonged to Greenville Progressive Grocers' Cooperative Association, but all of the Greenville Progressive Grocers' Cooperative Association members did not belong to The Topper Stores.

The Topper Stores maintained its office at the warehouse of Greenville Progressive Grocers' Cooperative Association where each week representatives of The Topper Stores met for the purpose of formulating their newspaper ads for that week. Miss Jack Burford, who was employed by Greenville Progressive Grocers' Cooperative Association, assisted this group in the formulation of these ads and was paid additional compensation for such services.

On the date of the signing of the contract, a salesman for the plaintiff went to the warehouse of Greenville Progressive Grocers' Cooperation Association, accompanied by a Mr. Glass, who was a sales manager for Television Station WFBC, Greenville, South Carolina. As a result of this meeting, Miss Jack Burford purportedly executed the contract in question for Greenville Progressive Grocers' Coopera-

tive Association for the rental of films for advertising purposes. It is conceded that plaintiff had had no previous dealings with Greenville Progressive Grocers' Cooperative Association.

One witness, Mr. Jack Gainey, Jr., the television advertising representative employed by plaintiff testified by way of deposition: "We talked to Mr. Smith who represented himself to be the manager of the firm and to Miss Jack Burford who was represented to be the advertising manager." Another witness, Mr. Robert Q. Glass, Jr., a sales manager employed by Television Station WFBC, testified he accompanied Mr. Gainey to the office of The Topper Stores to try to sell a television program and that he thought The Topper Stores was the same thing as Greenville Progressive Grocers' Cooperative Association. Another witness, Mr. Charles Sterling, an advertising salesman for the Greenville News Piedmont, testified that he had previously sold newspaper advertising to The Topper Stores and that he considered The Topper Stores and Greenville Progressive Grocers' Cooperative Association one and the same. There is evidence that all advertising bills were paid by Greenvillle Progressive Grocers' Cooperative Association, that The Topper Stores was a trade name with no apparent separation between the two, that Miss Burford was office manager and was the only one who dealt with the public concerning advertising. Plaintiff's representative was referred by defendant's manager to Miss Burford as the person he should see about advertising.

The 1954 City Directory for the City of Greenville was introduced into evidence over defendant's objection as being heresay. This directory listed Victor E. Smith as manager of Greenville Progressive Grocers' Cooperative Association and Miss Jack Burford as assistant manager and exception is made on appeal. Whether the 1954 Directory was admissible or not is immaterial here as the contract sued upon was entered into in 1953.

Five witnesses, including defendant's President, Secretary, two members of the Board of Directors, and former manager, testified that at the time of the signing of the alleged contract Miss Burford had no authority to bind defendant.

There is also evidence that the purpose of Greenville Progressive Grocers' Cooperative Association was to buy in bulk and sell wholesale to its retail members, that nothing could be gained through advertising as it sold only to its members and that for this reason it had never engaged in any form of advertising. It is also conceded that the film was not made especially for the Greenville Progressive Grocers' Cooperative Association, was never shipped and never exhibited.

With respect to one having the apparent authority to bind another "The general rule, * * *, embraces three primary elements. These are (1) a representation by the principal, (2) a reliance upon such representation by a third person; and (3) a change of position by such third person in reliance upon such representation. All three elements must be present to bring a case within the rule. The person sought to be bound must, by his word or conduct, have represented that the person assuming to act for him, had authority so to do. Accordingly an estoppel does not arise from the mere fact that the agent has acted for the principal on one or more previous occasions, but not under the appearance of a general authority so to act, nor does the rule in question apply to acts of the agent outside the scope of the authority which the principal has caused him to seem to possess." 2 Corpus Juris 464; 2 C. J. S., Agency, § 29; *Federal Land Bank of Columbia v. Ledford,* 194 S. C. 347, 9 S. E. (2d) 804; *Fochtman v. Clanton's Auto Auction Sales,* 233 S. C. 581, 106 S. E. (2d) 272. See also, *Williams v. Western Union Telegraph Co.,* 138 S. C. 281, 136 S. E. 218; *Williams v. Commercial Casualty Ins. Co.,* 159 S. C. 301, 156 S. E. 871.

Under the conflicting and inconclusive testimony heretofore referred to and the holding of this Court in *Fochtman v. Clanton's Auto Auction Sales, supra,* we are of opinion that the evidence is insufficient to establish as a matter of law that Miss Jack Burford could bind defendant through her apparent authority by the contract in question, that the question was one for determination by the jury, that the judgment appealed from must be set aside and a new trial ordered.

The verdict and judgment appealed from is therefore reversed and the case remanded for a new trial. Reversed.

STUKES, C. J. and OXNER, LEGGE and Moss, JJ., concur.