0838

Lloyd WATKINS, Respondent v. MOBIL OIL CORPORATION and John T. McCampbell, of which Mobil Oil Corporation is Appellant.

(352 S. E. (2d) 284)

Court of Appeals

*J. Reese Daniel* of *Daniel & Daniel,* Columbia, *for appellant.*

*J. Marvin Mullis, Jr.,* and *Carl N. Lundberg,* Columbia, *for respondent.*

Heard Sept. 15, 1986.

Decided Dec. 15, 1986.

GOOLSBY, Judge:

Lloyd Watkins brought suit against the appellant Mobil Oil Corporation and John T. McCampbell alleging causes of action for assault and battery and for malicious prosecution. The causes of action arose out of an incident that occurred at a gasoline station operated by Station Operators, Inc. Watkins alleged in his amended complaint that McCampbell was Mobil's "agent, servant, and employee." Mobil denied that he was so in its amended answer. The jury returned a verdict in Watkins' favor against both Mobil and McCampbell for actual and punitive damages. Mobil appeals the failure of the trial judge to grant its motions for directed verdict and judgment notwithstanding the verdict.

The dispositive issue in this case is whether Watkins established that McCampbell, an employee of Station Operators, was Mobil's "agent, servant, and employee."

We examine the evidence in accordance with the principles that a judgment must be affirmed on appeal where there is any evidence to support the factual findings implicit in the jury's verdict and that the party opposing the motions for directed verdict and judgment notwithstanding the verdict is entitled to all favorable inferences where the evidence is conflicting. *Hilton Head Island Realty, Inc. v. Skull Creek Club*, 287 S. C. 527, 339 S. E. (2d) 890 (Ct. App. 1986).

Sometime between 10:00 and 10:30 p.m. on September 1, 1979, Watkins went to the North Main Mobil Oil Station near Interstate-20 and U. S. Highway 21 in Richland County. Watkins intended "to purchase a pack of cigarettes." He went to North Main Mobil because it was the "closest station to [his house] that sold [his] particular brand across the counter."

As he opened the door to enter the station, a man, later identified as McCampbell, slammed the door on Watkins' hand. Watkins grabbed the door open with his good hand. He demanded an explanation from McCampbell saying, "Hey, what's wrong with you?"

McCampbell responded, "This place is closed."

Watkins then remarked, "Well, you picked a hell of a way to tell me it was closed."

On hearing Watkins' remark, McCampbell cursed, went

behind the counter, and got a gun. He advanced toward Watkins with the gun. Watkins feared for his life.

The station manager stopped McCampbell and tussled with him over the gun. McCampbell, who was the assistant manager of the station, shot the station manager in the struggle for the gun.

Several days later, two officers arrested Watkins on a warrant charging Watkins with having trespassed upon the premises of "North Main Mobil ... after he was told the store was closed." McCampbell's affidavit supported the warrant. He secured the warrant "because they told him" to do so.

The officers took Watkins handcuffed to the Richland County Jail where he was fingerprinted, photographed, and incarcerated. A magistrate later dismissed the trespassing charge.

Station Operators ran all Mobil stations in the Columbia area. It employed McCampbell and paid his salary.

No sign identified the station as one operated by Station Operators; however, a Mobil sign topped the station and the word "Mobil" appeared on the station's gasoline pumps. The station manager wore a jacket that exhibited the Mobil emblem.

## I.

We first address the question of whether the evidence was sufficient to support a finding of actual agency.

The decisive test in determining whether the relation of master and servant exists is whether the purported master has the right or power to direct and control the servant in the performance of his work and in the manner in which the work is to be done. *Keitz v. National Paving Co.*, 214 Md. 479, 134 A. (2d) 296 (1957); *see Fernander v. Thigpen*, 278 S. C. 140, 144, 293 S. E. (2d) 424, 426 (1982) ("The test to determine agency is whether or not the purported principal has the *right to control* the conduct of his alleged agent.") (Emphasis theirs); *Young v. Warr*, 252 S. C. 179, 189, 165 S. E. (2d) 797, 802 (1969) ("The general test applied is ... whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment."); *DeBerry v.*

*Coker Freight Lines,* 234 S. C. 304, 307-08, 108 S. E. (2d) 114, 116 (1959) ("The right or power of control retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee...").

Here, there is no evidence whatever that Mobil asserted any right to control Station Operators' operations or its employees, including McCampbell. Absent from the record also is any evidence that Station Operators leased the premises from Mobil or had any sort of agreement with the oil company. So far as the record before us reveals, Station Operators alone controlled the station's operations, its employees, and the station's premises.

Indeed, the evidence shows nothing more than that Station Operators sold Mobil's gasoline, permitted an employee to wear clothing exhibiting Mobil's emblem, and displayed Mobil's name atop its station and on its pumps. The display of Mobil signs and its emblem merely represented to motorists and others that the station marketed Mobil's products. *Coe v. Esau,* 377 P. (2d) 815 (Okla. 1963).

Without some evidence of Mobil's right to control the conduct of Station Operators' business, the evidence is insufficient to warrant the conclusion that a master-servant relationship existed between Mobil and Station Operators, thereby rendering Mobil liable for McCampbell's actions. *Price v. Cities Service Oil Co.,* 71 A. D. (2d) 700, 418 N. Y. (2d) 488 (1979); *see Manis v. Gulf Oil Corp.,* 124 Ga. App. 638, 185 S. E. (2d) 589 (1971) (evidence that a station operator advertised and sold an oil company's products, allowed its employees to wear the oil company's uniform, and accepted the oil company's credit cards held insufficient to create an issue of fact that the station operator was the oil company's agent).

Watkins, therefore, failed to establish actual agency. *B. P. Oil Corp. v. Mabe,* 279 Md. 632, 370 A. (2d) 554 (1977); *cf. Fernander v. Thigpen, supra* (a genuine issue of material fact held to exist concerning whether an agency relationship existed between a restaurant franchisor and its franchisee where the franchisee's employees thought they worked for the franchisor, the restaurant displayed the franchisor's signs and used the franchisor's napkins, uniforms, and ad-

vertising, and the franchise agreement showed the franchisor retained the right to control the detailed operations of the franchisee, including the management of employees); *Chevron Oil Co. v. Sutton*, 85 N. M. 679, 515 P. (2d) 1283 (1973) (a genuine issue of material fact held to exist concerning whether an oil company asserted sufficient control over a station operator so as to create a master-servant relationship where the station operator was the oil company's lessee and the evidence showed the station operator was required, among other things, to promote the sale of the oil company's brand products, promote the oil company's image, and remain open at designated times and the evidence also showed the station operator sold gasoline and oil provided by the oil company and received the benefit of the oil company's advertising, the station operator wore a uniform displaying the oil company's emblem, and the station operator's customers were allowed to charge purchases of both products and repairs on the oil company's credit card).

## II.

We next address the question of whether the evidence was sufficient to support a finding of apparent agency.

To establish apparent agency, it is not enough simply to prove that the purported principal by either affirmative conduct or conscious and voluntary inaction has represented another to be his agent or servant. A party must also prove reliance upon the representation and a change of position to his detriment in reliance on the representation. *ZIV TV Programs v. Associated Grocers, Inc., of S. C.*, 236 S. C. 448, 114 S. E. (2d) 826 (1960); *Fochtman v. Clanton's Auto Auction Sales*, 233 S. C. 581, 106 S. E. (2d) 272 (1958); (2A) C. J. S. *Agency* 160 at 797 (1972); RESTATEMENT (SECOND) OF AGENCY § 267 (1958); *see Fernander v. Thigpen, supra* (Littlejohn and Gregory, JJ., dissenting and citing RESTATEMENT (SECOND) OF AGENCY § 267 (1958) with approval).

As in *B. P. Oil Corp. v. Mabe, supra,* only the factor of reliance warrants discussion because the evidence falls far short of establishing reliance.

Watkins went to the station to buy cigarettes, not gasoline. The only reason he selected the Mobil sta-

tion was because of its proximity to his house. Although Watkins had purchased ice, soft drinks, and cigarettes from the station on other occasions, there is no evidence Mobil supplied Station Operators with these items. *See Apple v. Standard Oil, Division of American Oil Co.*, 307 F. Supp. 107 (N. D. Cal. 1969) (wherein the court held that the plaintiff failed to establish apparent agency where the plaintiff had had no contact with the oil company, had never visited the station before, and had stopped at the station to purchase a fan belt, which the oil company did not supply to the station operator, only because the station would honor his credit card).

Furthermore, there is no evidence that Watkins was attracted to the station because it was a Mobil station or that he was enticed by Mobil's advertising to visit the station. *Cf. Gizzi v. Texaco, Inc.*, 437 F. (2d) 308 (3d Cir. 1971), *cert. denied*, 404 U. S. 829, 92 S. Ct. 65, 30 L. Ed. (2d) 57 (1971) (ostensible agency found where the plaintiff testified that he was aware of the oil company's advertising and that the advertising instilled a certain sense of confidence in the oil company and its products).

We disagree with Watkins' argument that the sale of Mobil's products, the presence of Mobil's signs and a similar emblem on the station manager's uniform, and the recital in the arrest warrant signed by McCampbell identifying the station as the "North Main Mobil" constituted sufficient evidence to establish apparent agency. *Sydenham v. Santiago*, 392 So. (2d) 357 (Fla. Dist. Ct. App. 1981); *Manis v. Gulf Oil Corp., supra; Apple v. Standard Oil, Division of American Oil Co., supra; Levine v. Standard Oil Co., Inc., in Kentucky*, 249 Miss. 651, 163 So. (2d) 750 (1964); *Reynolds V. Skelly Oil Co.*, 227 Iowa 163, 287 N. W. 823 (1939). At most, this evidence constituted a representation that Mobil operated the station. It did not establish Watkins' reliance on the representation.

Watkins, therefore, failed also to establish apparent agency. *B. P. Oil Corp. v. Mabe, supra; cf. Shadel v. Shell Oil Co.*, 195 N. J. Super. 311, 478 A. (2d) 1262 (1984) (a jury question was held presented and the grant of summary judgment was deemed inappropriate where an oil company ostensibly held itself out to the public as the owner and

operator of a service station leased by the oil company to another defendant, the oil company's advertising led the plaintiff-customer to believe the oil company made a special effort to provide good services to its customers, and the plaintiff-customer, who was assaulted at the station by an attendant, patronized the station to purchase gasoline).

For the foregoing reasons, we reverse the judgment below. The trial judge should have granted Mobil's motions for directed verdict and judgment notwithstanding the verdict. A master-servant relationship did not exist between Mobil and Station Operators and its employee, McCampbell, either by reason of actual agency or of apparent agency.

We find no necessity to address the other issues raised by Mobil.

Reversed.

CURETON, J., concurring in separate opinion and GARD-NER, J., dissenting in separate opinion.

CURETON, Judge (concurring):

I concur in the opinion written by Judge Goolsby because it reflects both accurate facts and the applicable law in this case.

First, a distinction must be made between actual agency (whether expressed or implied) and ostensible agency. The following statement reflects the general rule:

> An implied agency is distinguishable from an agency by estoppel, or ostensible agency, ... although the two are often confused and the courts as a rule do not distinguish them but use the terms synonymously. An implied agency is an actual agency as much as if it were created by express words, and is a fact to be shown or ascertained by inferences and deductions from other facts for which the principal is responsible, while agency by estoppel should strictly be limited to those cases where the authority is not real but apparent.

2A C. J. S. *Agency* Section 52 (1972). *Accord, Federal Land Bank of Columbia v. Ledford*, 194 S. C. 347, 9 S. E. (2d) 804 (1940).

In this case, even a cursory reading of the record shows

that there is no evidence that McCampbell was the actual (implied) agent of Mobil Oil. The only evidence presented by Watkins in his case in chief on the question of agency was his own testimony that the manager of the station "was dressed in a Mobil Oil uniform, a light blue jacket with the Mobil emblem." On the other hand, Branham, Mobil's witness, and a manager for Station Operators, testified that Station Operators operated the store and had hired and supervised McCampbell. He further testified that Mobil had nothing to do with the store's operation.[1] Clearly, such evidence does not show actual agency.

On the issue of ostensible agency, Branham stated on cross-examination that the store displayed Mobil's signs and sold Mobil gasoline. He responded to a question by Watkins' counsel as follows:

Q. My question to you, very, very, simply, down to earth, did anybody that came up to that station had no (sic) reason to believe that they were dealing with anybody but Mobil Oil Company and the people that worked for Mobil Oil Company?

A. That's right, that right.

When a third party relies, as Watkins evidently does, on an ostensible or apparent agency,[2] all of the elements of an estoppel must be present. There must be conduct or a representation calculated to mislead, an actual reliance upon such representation and a change of position or injury in reliance upon such representation. *Federal Land Bank of Columbia v. Ledford, supra;* 2A C. J. S. *Agency* Section 61. The record is devoid of any evidence that Watkins relied upon the actions or inactions of Mobil to his injury.

Regarding the injustice that the dissent says is implicit in Judge Goolsby's opinion, it has not been demonstrated to me why Watkins did not or cannot sue Station Operators, the admitted principal of McCampbell. I would think that jus-

---

[1] The record does not show who owned the store.

[2] Regardless of the dissent's assertion that ostensible agency is irrelevant to this case, Watkins requested and received a jury charge on apparent agency. We have no way of knowing that the jury's verdict is not based on apparent or ostensible agency.

tice could best be served by Watkins suing Station Operators.

GARDNER, Judge (dissenting):

I dissent. The jury in the trial of this case awarded Watkins actual damages of $30,000 and punitive damages of $100,000. The majority opinion is, in the opinion of the writer, woefully inconsonant with both the law of this state and obvious justice. The concurring opinion's discussion of implied as opposed to ostensible agency is irrelevant to this case and this dissent. The word agency as used in this dissent relates to actual agency, i.e., a relationship which actually exists as a result of an agreement of the parties; implied agency is a relationship held to exist by the courts from the acts and conduct of the parties; ostensible agency is in reality no agency at all, but is based entirely upon estoppel; something which has no relevance to the case at hand. 2A C. J. S. *Agency* Section 52(a) and (b) (1980). My brother who authors the concurring opinion overlooks the establishment of a *prima facie* case by Watkins of actual agency. If by no other evidence the fact that one of the employees was dressed in a Mobil Oil uniform while working in a Mobil Oil station is sufficient evidence to make out a *prima facie* case of agency; at this point, as later noted, the burden of proof of agency shifted to Mobil Oil.

In South Carolina agency may be evidenced by circumstances, apparent relations and conduct, and may be proved by circumstantial as well as positive testimony. *Gathers v. Harris Teeter Supermarket*, 282 S. C. 220, 317 S. E. (2d) 748 (Ct. App. 1984). *See also* 15 West S. C. Digest, *Principal and Agency*, Key No. 23(2). Additionally, and of great importance to this case, the existence of agency is a question of fact to be determined by the jury and if there is any competent evidence from which an inference of such agency may be legitimately drawn, the question is one for the jury. *Hinson v. Roof*, 128 S. C. 470, 122 S. E. 488 (1924). *See also* 15 S. C. West Digest, *Principal and Agent*, Key No. 24.

With the above backdrop, let us examine the record; upon doing so it becomes obvious that the appearance and circumstances surrounding Watkins' injury give credence to far more than an inference of agency; there is substantial cir-

cumstantial evidence of agency; there is, in fact, overwhelming direct evidence of agency. And, strangely, Mobil failed to offer as a witness even one employee to testify that at the pertinent time the station in question was not its station being operated for its benefit.

As to the appearance of the station, Mr. Gene Branham, Mobil's only witness on the subject, testified that the station had Mobil written on the top of it, that Mobil was written on the gas pumps and that any person that came off the Interstate or lived in that area or lived anywhere in Columbia who did business with this station had every reason to believe that they were doing business with Mobil Oil Corporation. And, of startling importance, Mobil's witness Branham testified that there was no reason for anybody trading with the station to believe that they were dealing with anyone other than Mobil Oil Corporation.

It is an uncontradicated fact that the service station at which the assault occurred was a Mobil Oil Corporation service station. Throughout all the testimony, the service station was referred to by all witnesses of record as a Mobil Station; the station was identified by payroll records as Station Number 10,704, which indicates it was only a small part of the holdings of its owner. The arrest warrant described the station as North Main Mobil (I-20 and I-26 intersection). It is of significance and importance that no sign such as "John Doe, Operator" appeared on the station and of even more significance is the fact that the words "Station Operators, Inc." appeared nowhere on the premises. The station advertised Mobil gasoline and oil; it sold Mobil oil and gasoline and bore a large sign over the station on which was written "Mobil." The manager of the station wore a Mobil Oil Corporation uniform.

The jury was correctly instructed on the law of agency as set forth herein and the necessary proof thereof in South Carolina; based on the above evidence, the jury found against Mobil on this issue. The majority would hold that there was no evidence of agency; the writer cannot agree with this decision; the writer would hold that there is not only some evidence but an abundance of evidence as to agency.

Now, the majority opinion would hold that Service Oper-

ators, Inc., was an independent contractor and that Mobil Oil Corporation exercised no control over it. The truth of the matter is that there is not one scintilla of evidence of record to indicate whether Station Operators, Inc., was a managing agent for Mobil Oil Corporation or was a subsidiary corporation of Mobil Oil Corporation or was, as the majority would hold without reason, an independent contractor over which Mobil had no control.

And, the majority opinion erroneously holds that the burden of proof was on Watkins to establish that Station Operators, Inc., was an independent contractor. The law in South Carolina is contra; it is set forth plainly in the case of *Cooper v. Graham*, 231 S. C. 404, 98 S. E. (2d) 843 (1957) wherein the Supreme Court of South Carolina holds that once a *prima facie* case of agency has been made (and such a case was made by Watkins), a defendant, who claims that it was not liable because the work was being done by an independent contractor, has the burden of proving such relationship.[1] The court points out that "the facts pertaining thereto being peculiar within his [Mobil's] knowledge, the law and justice, require that the defendant establish the alleged contract to the satisfaction of the jury by the greater weight of the evidence." The court also observed in *Cooper v. Graham* that it would be unfair and work a hardship if the burden should be put upon the plaintiff of disproving an alleged contract to which he is an entire stranger. This logic is appealing to the writer. Aside from this, Mobil does not allege that the station was operated by an independent contractor. Mobil's answer contains a denial, but no affirmative defenses. And again the writer notes that no employee of Mobil testified and, further, there is a total dearth of documentary evidence (contracts, etc) to support the argument that Station Operators, Inc., was an independent operator.

Moreover, the writer disputes the propositions of law and authorities cited in the majority opinion. While it is true

---

[1] And this is the crux of the case; Watkins by positive and circumstantial evidence made a *prima facie* case of agency; the burden then shifted to Mobil to prove its theory that the station was operated by an independent contractor, i.e., Service Operators, Inc. The same would be true if Watkins had made a *prima facie* case either of implied agency or agency by estoppel.

that the case of *Coe v. Esau,* 377 P. (2d) 815 (Okla. 1963), holds that the display of Mobil signs and its emblem merely represented to motorists and others that the station marketed Mobil's products, the writer would hold that this decision from an oil state is anachronistic in 1986. Even in 1963, when the decision was written, those stations which were not operated by Mobil had signs such as "John Doe, Operator." Moreover, it is common knowledge that since the oil embargo by the organization of petroleum exporting countries (OPEC) in 1972, the oil companies have moved away from the use of independent contractors toward the operation of service stations by the oil companies or managing agents of the oil companies themselves or by management firms. In 1971, before the embargo, 250,000 service stations were owned by independents, oil jobbers and franchises. In 1981, when gasoline prices were decontrolled, this number had shrunk to 150,000. Five years later, in 1986, the number had decreased to 135,000. *See* trade publication called *Lindberg Letters* Vol. 13, No. 29, dated May 16, 1986. The writer also observes that self-service convenient stores owned by oil companies have replaced the traditional service station owned by independent contractors. For example, Zippy Marts/Fast Fares are owned by Crown Central Oil Company, Kayo is owned by Continental Oil Company, and Port, Starvin Marvin and Jet are all owned by Marathon Oil Company. Additionally, Gulf and Shell Oil Companies are operating stations selling candy and other convenience store items.

I find no merit to the other grounds of appeal argued by Mobil Oil Corporation.

For the reasons stated, I disagree with the holdings of the majority opinion and dissent; I would also reject the two arguments made by Mobil but not reached by my brethren of the majority opinion.

Mobil argues that the trial judge wrote the form of the verdict on the back of a complaint which contained a cause of action which was not submitted to the jury. I would reject this argument because there is some question as to whether the trial judge permitted Mobil to examine the complaint and other documents to be given the jury and also because the trial judge clearly instructed the jury that the pleadings

were not evidence.

Additionally, Mobil argues that the verdict exceeds the amount contained in the prayer for relief which Mobil asserts was $100,000 rather than the million dollars on the amended complaint which should have been submitted to the jury. I would reject this argument for the reasons stated in *Jones v. Bennett*, 290 S. C. 96, 348 S. E. (2d) 365 (Ct. App. 1986), and the cases therein cited. Mobil cites *Cumming v. Lawrence*, 87 S. C. 457, 69 S. E. 1090 (1910) and *Smith v. Cox*, 83 S. C. 1, 65 S. E. 222 (1909), as authority for the proposition that a verdict cannot exceed the prayer of the complaint; these cases do not stand for that proposition; rather, these two cases hold that wherein the body of the complaint, the damages are limited by the allegations of the complaint, under those circumstances, a verdict cannot exceed the damages so stated. *Cumming* and *Smith* are not authority for the proposition that the prayer limits the jury award.

For the reasons stated above, I dissent and would affirm the appealed judgment.